# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION, AND
NOKIA TECHNOLOGIES OY,

          Plaintiffs,

    v.

AMAZON.COM, INC., AND AMAZON.COM
SERVICES, LLC,

          Defendants.

C.A. No. 23-1232 (GBW)

---

## OPENING BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR PARTIAL DISMISSAL
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants Amazon.com, Inc.
and Amazon.com Services, LLC*

OF COUNSEL:

J. David Hadden
Saina S. Shamilov
Ravi R. Ranganath
Allen Wang
Vigen Salmastlian
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
(650) 988-8500

Todd R. Gregorian
Ethan M. Thomas
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
(415) 875-2300

January 19, 2024

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

III.  SUMMARY OF THE ARGUMENT .............................................................2

IV.  STATEMENT OF FACTS ........................................................................3

    A.  The '254 Patent ..........................................................................3

    B.  The '741 Patent ..........................................................................5

    C.  The '693 Patent ..........................................................................6

    D.  The '602 Patent ..........................................................................8

    E.  The '818 Patent ..........................................................................9

V.  ARGUMENT .......................................................................................9

    A.  The '254 Patent is patent-ineligible. .............................................10

    B.  The '741 Patent is patent-ineligible. .............................................13

    C.  The '693 Patent is patent-ineligible. .............................................16

    D.  The '602 Patent is patent-ineligible. .............................................17

    E.  The '818 Patent is patent-ineligible. .............................................19

    F.  The Court should hold all claims of the challenged patents invalid under § 101. .................................................................................19

    G.  The Court should deny leave to amend....................................20

VI.  CONCLUSION....................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016).......................................................................*passim*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)........................................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016)......................................................................12, 13

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)......................................................................12, 20

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018)......................................................................11, 16

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)........................................................................11, 18

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018)......................................................................14

*DigiMedia Tech, LLC v. ViacomCBS Inc.*,
    592 F. Supp. 3d 291 (S.D.N.Y. 2022).............................................................13, 15

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)......................................................................16

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2018)......................................................................10, 15, 16

*F45 Training Pty Ltd. v. Body Fit Training USA Inc.*,
    No. 20-1194, 2022 WL 17177621 (D. Del. Nov. 17, 2022), *appeal dismissed*,
    No. 2023-1304, 2023 WL 2965590 (Fed. Cir. Apr. 17, 2023) ......................17

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016)......................................................................10

*GREE, Inc. v. Supercell Oy*,
    834 Fed. Appx. 583 (Fed. Cir. 2020)..............................................................17

*GREE, Inc. v. Supercell Oy*,
    855 F. App'x 740 (Fed. Cir. 2021) .................................................................14

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) ......................................................................12, 16

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016).......................................................................13, 17

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
  50 F.4th 1371 (Fed. Cir. 2022) .............................................................................14

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
  No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan. 9, 2024) .....................................10

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017).............................................................................16

*Intell. Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017).......................................................................11, 12

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)..........................................................3, 10, 11, 13

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018).............................................................................14

*Nokia Corp. v. Amazon.com, Inc.*,
  C.A. No. 23-1236-GBW .............................................................................1, 9, 19

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
  223 F. Supp. 3d 1026 (C.D. Cal. 2016) ................................................................18

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
  696 F. App'x 1014 (Fed. Cir. 2017) ......................................................................13

*Simio, LLC v. FlexSim Software Prod., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020)..............................................................................10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016)..............................................................................17

*Twilio, Inc. v. Telesign Corp.*,
  249 F. Supp. 3d 1123 (N.D. Cal. 2017) ................................................................11

*Two-Way Media v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)...................................................................... *passim*

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019)..............................................................................16

*Universal Secure Registry LLC v. Apple Inc.*,
　10 F.4th 1342 (Fed. Cir. 2021) ............................................................................2

*Wireless Discovery LLC v. Coffee Meets Bagel, Inc.*,
　654 F.Supp.3d 347 (D. Del. 2023)........................................................................20

**STATUTES**

35 U.S.C. § 101 .................................................................................................. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...................................................................................2, 10

Fed. R. Civ. P. 12(c) .............................................................................................2

## I.       INTRODUCTION

This is a patent case—one of many filed by Nokia Technologies Oy ("Nokia") in jurisdictions around the world in its ongoing and well-publicized licensing dispute with Amazon.[1] To maximize the burden and cost to Amazon of defending against these meritless cases, Nokia has opted for quantity over quality, asserting twenty-one patents in two cases before this Court, seven patents in two cases before the U.S. International Trade Commission, and numerous additional patents across at least eight other cases outside the U.S.  But the patents Nokia asserts are invalid on their face:  the five at issue in this motion claim abstract ideas—routing messages to an address using identifiers, providing access to application information on a locked device, combining different types of data, arranging components within a housing, and encoding and decoding video data by classifying parameters in a picture—while reciting no new, let alone inventive, technology for implementing these ideas.  The Court should hold these patents invalid and dismiss Nokia's claims with prejudice for failure to claim eligible subject matter under 35 U.S.C. § 101.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

Nokia filed its complaint in this case on October 27, 2023, and filed an amended complaint on October 31, 2023, asserting eleven U.S. patents.  (D.I. 5 ("Am. Compl.").)  Seven of the eleven asserted patents relate to video coding.  This motion seeks a determination of invalidity of the four *non-video* patents—U.S. Patent Nos. 7,480,254 ("the '254 patent"), 8,918,741 ("the '741 patent"), 8,996,693 ("the '693 patent"), 9,473,602 (the "'602 patent")—as well as U.S. Patent No. 7,724,818

---

[1] This is one of two lawsuits Nokia filed against Amazon in this District.  *See Nokia Corp. v. Amazon.com, Inc.*, C.A. No. 23-1236-GBW (the "1236 Matter").  In the 1236 Matter, Nokia asserts fifteen patents, six of which Amazon has challenged in its concurrently-filed motion to dismiss for failure to claim patent-eligible subject matter under § 101.  In the 1236 Matter, Amazon seeks an invalidity determination as to the '818 patent, of which Nokia asserts a different claim in this case.

("the '818 patent").[2]  These patents claim patent-ineligible subject matter under 35 U.S.C. § 101 and are thus invalid.  Accordingly, defendants Amazon, Inc. and Amazon.com Services, LLC (collectively, "Amazon") respectfully request that the Court dismiss Nokia's claims on these patents under the Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## III.    SUMMARY OF THE ARGUMENT

1.    The patents challenged in this motion are directed to abstract ideas—routing messages to a registered address using identifiers ('254 patent), providing limited access to information on a locked device ('741 patent), combining different types of data ('693 patent), arranging components within a housing ('602 patent), and encoding and decoding video data by classifying parameters in a picture ('818 patent)—but recite only routine, conventional, and generic computing components and processes and functional limitations.  Under a long line of recent, controlling Federal Circuit decisions, patents that merely claim a desired result and fail to disclose a specific technical solution for the problem they purport to solve, are patent-ineligible under § 101.  *See Two-Way Media v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (invalidating claims "directed to a result or effect that itself is the abstract idea and merely invoke[] generic processes and machinery); *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (invalidating claims "describ[ing] a desired function or outcome, without providing any limiting detail . . . to a particular solution"); *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1357 (Fed. Cir. 2021) (holding claims "directed to an abstract idea rather than a technological solution to a technical problem" fail Step One).  The

---

[2] Amazon focuses this motion on five of the eleven asserted patents in light of page limitations set by the Court's rules.  But nothing in this motion should be construed as an admission that any of the remaining nine asserted patents claims eligible subject matter; to the contrary, the remaining patents have similar flaws and Amazon reserves its right to seek a judgment on the pleadings of § 101 invalidity under Rule 12(c) as the case proceeds.

patents thus fail at Step One of the *Alice* test.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

2.    The challenged patents also fail to recite an inventive concept necessary to transform the claimed abstract ideas into patent-eligible subject matter.  Instead, the claims recite generic computer components and functional steps inherent to the abstract ideas themselves.  Courts have universally held such claims non-inventive.  *See, e.g.*, *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) ("a claim directed to an abstract idea [that] 'contains no restriction on how the result is accomplished' . . . is not patent-eligible.") (internal quotation omitted); *Affinity*, 838 F.3d at 1271 ("The features set forth in the claims are described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent.").  The claims thus fail also at *Alice* Step Two; they are patent-ineligible and invalid under § 101.  *Affinity*, 838 F.3d at 1268.

## IV.    STATEMENT OF FACTS

### A.    The '254 Patent

The '254 patent is titled "System, apparatus, and method for providing multi-application support using a single protocol stack," and "relates in general to network communications."  (*See* '254 pat. at Cover, 1:8-9.)  According to the patent, "[a]dvances in communication infrastructures and protocols have allowed standard computing devices to become valuable communication tools."  (*Id.* at 1:16-18.)  The patent describes several existing prior art protocols that allow these devices to communicate over both landline and wireless networks, including the "Session Initiation Protocol (SIP)."  (*See id.* at 1:37-42.)  But the patent notes a purported problem with these existing protocols:  the user's device has different applications that "provide different functionalities concurrently," and when the device receives a message, it "must determine which application an incoming message should be directed to."  (*Id.* at 1:55-63.)

The patent purports to address this problem by using an application "identifier" to route messages. Specifically, the patent describes three steps: (1) "[a]n application identifier is registered for each . . . application[] available at the terminal" or user device; (2) an incoming message is received at the terminal, which "includes the registered application identifier" for the application "that is to receive the incoming message"; and (3) "the terminal directs the incoming message to the appropriate" application. (*Id.* at 2:21-33; Fig. 5.)



Figure 5, reproduced here, provides a visual depiction of this flow.

Asserted claim 1 of the '254 patent is directed to this basic idea. It recites a "method for directing messages in signaling protocol communications occurring over a network" comprising a series of functional steps: "*registering* an application identifier" for each application "to which incoming messages may be directed"; "*receiving* from a network element at least one of the incoming messages" where the message "includes the registered application identifier"; "*directing* the incoming message" to the application corresponding to the "identifier"; "*registering* an association" of a user's address and the address of the "terminal" by "*associating* the application identifier and the contact address of the terminal with the address of record." ('254 pat. at cl. 1 (emphasis added).) The claim thus requires registering an identifier for an application, receiving a message that includes an identifier corresponding to the identifier, and associating the identifier with the user's address and the address of the user's device or terminal.

The claim directs a skilled artisan to implement these basic steps using generic hardware and software components—a "terminal" and "network element." (*Id.* at 2:26-30.) The

4

specification states that the claimed "terminal" can be any generic "device"—*e.g.*, "hardware including a processor operable in connection with an operating system." (*See* '254 pat. at 6:16-19.) The "network element" can be any one of "servers," "desktop computers," "workstations," "laptop," or "any other similar computing device capable of communicating via the network." (*Id.* at 5:8-14.) The specification describes the claimed "registering," "receiving," and "directing" steps as generic computer functions. (*See id.* at 5:1-4; 8:21-22) The "receiving" and "directing" steps are conventional steps by which a "terminal can receive incoming messages via the network" and "direct the messages," while the "register[ing]" steps are conventional steps in which a "registrar writes [an] association" of the information being registered. (*Id.* at 4:56-58; 5:66-6:7.)

**B.      The '741 Patent**

The '741 patent is titled "Unlocking a touch screen device" and "generally relate[s] to user interfaces and in particular transitioning from an idle/locked state of a device to an active/unlocked state of a device." ('741 pat. at cover, 1:15-17.) According to the patent, mobile devices "generally include a variety of applications, including for example Internet communications, instant messaging capabilities, email facilities, [and] web browsing and searching," but to avoid inadvertently activating these functions, "devices generally include[] a locked mode." (*Id.* at 1:20-27.) Because unlocking typically requires entering a passcode or use of a fingerprint sensor, the interface presented during lock mode "is pre-determined by the device." (*Id.* at 1:27-32.) A user thus cannot unlock the device and go directly to an application. (*See id.* at 1:32-36.)

The patent purports to address this problem by providing a touch screen on a device in idle or locked mode, where an active region of the screen associated with an application can be moved or expanded to reveal an application. (*Id.* at 1:40-52.) "As the [application] icon is moved or dragged to an edge of the device, the device changes state to an active/unlocked mode and opens in the application or set of user elements associated with the revealed application icon." (*Id.* at



FIG. 2B

1:50-53.) Figure 2B, shown here, is an illustration of the claimed invention, in which a user can click on an application icon to unlock a screen. (*Id.* at Fig. 2B.) (*See id.* at 5:4-6:56.)

Asserted claim 11 is directed to this basic idea. It claims a method comprising just two steps: (1) "causing a display of a device to display an object, relating to an application, when the device is in a locked mode"; and (2) "enabling a user to select the object while the device is in the locked mode." (*Id.* at cl. 11.) This allows a user to "determine a state, function or utility of the application without fully activating the application while the device remains in the locked mode." (*Id.*) The claim recites a series of functions—using a generic "device" with a "display" to perform generic computer functions such as "display[ing]," "select[ing]," and "determin[ing] a state, function or utility"—implemented in an unspecified manner. (*Id.*) It does not explain *how* to allow a user to determine information about an application when a device is locked, much less "determine a state, function or utility of the application without fully activating the application" while the device remains locked. (*Id.*)

The specification makes clear that the claimed invention may be implemented using "*any* device that includes a *user interface* for the *display* and *accessing of information*." (*Id.* at 2:65-3:4; 7:39-42 (emphasis added).) The specification lists several conventional ways in which a user can select a displayed object, such as by "dragging" a displayed "icon" "*in any suitable fashion*," but provides no guidance on how the claimed "state, function or utility" information is determined "without fully activating the application." (*Id.* at 4:20-30, cl. 11 (emphasis added).)

## C. The '693 Patent

The '693 patent is titled "Method and apparatus for providing dynamic stream processing of data based on static analytics." ('693 pat. at cover.) According to the patent, under existing "processing architectures," "data processing and analysis historically have been segregated based

on whether the data being processed is 'slow moving' [or static] data"—data "collected over a long periods of time"—"or whether the data is collected as data streams in real-time (*e.g.*, social networking feeds, location tracking feeds, etc., processed by stream processing systems)." (*Id.* at 1:22-36.) The patent purports to address this problem through "data processing methods to generate comprehensive results that combines the features of [] slow moving data systems with real-time data systems." (*Id.* at 1:40-43.)

Asserted claim 1 of the '693 patent requires a method comprising the following functional steps: (1) "*determining* via a processor at least one processing element of at least one dynamic processing mechanism"; (2) "*causing . . . a marshalling* via the processor of the at least one processing element as at least one data object"; (3) "*transferring* of the at least one data object to at least one static processing mechanism"; and (4) "*after processing, transferring* the at least one data object back to the at least one dynamic processing mechanism." ('693 pat. at cl. 1 (emphasis added).) In other words, the claim requires separately processing static or slow-moving data and transferring it back to a dynamic processing mechanism. But the claim recites only generic hardware components—"static" and "dynamic" "processing mechanism[s]" that perform the generic computer functions of transferring and processing the data in an unspecified way. (*Id.*) It claims no specific, let alone new, technology or implementation.

The specification also does not describe any actual solution for implementing the claimed invention. The specification admits that static and dynamic processing architectures predated the patent. ('693 pat. at 1:17-36 (describing "traditional[] data processing and analysis"), 5:4-11 (giving generic high-level examples of static and dynamic processing).) The specification describes the claimed steps as generic computer functions. It provides no technical detail regarding the claimed "marshalling" except to equate it with encoding and using standardized data models

such as Resource Description Framework (RDF).  (*See id.* at 11:33-44.)  The "transferring" of a data object—any data "processable by at least one static processing mechanism"—may be done "using well known, new or still developing protocols," and the system may be implemented using the "widely known and used" client-server model, where a client processes dynamic data and a server processes static data.  (*Id.* at cl. 1; 1:18-36; 7:17-20; 9:26-34; 10:33-37.)

### D.  The '602 Patent

The '602 patent is titled "Portable electronic device," and generally "relates to a portable electronic device and, more particularly, to form factor configuration of a portable electronic device."  ('602 pat. at cover, 1:19-21.)  The patent purports to address the problem of "mechanical thinness" in foldable mobile phones, including "clam-shell" shaped phones.  (*Id.* at 1:23-28.)  The patent aims to provide "an architecture for an ultrathin fold product, such as a flip-phone style of mobile telephone, which can maintain aesthetic balance in proportions, and allow added thickness to avoid a 'squeezed' appearance . . . ."  (*Id.* at 1:35-39.)  Thus, the patent purports to address "aesthetic" concerns, not to solve a technological problem.  (*Id.*)

Asserted claim 1 recites a generic "portable electronic device" with a "one piece housing" on the sides and rear of the device.  (*Id.* at cl. 1.)  The housing has a "cut out in the rear side," "a camera" within the housing that extends to the rear side of the housing, "an engine section comprising a printed circuit board, a transceiver, a processor and a memory," and a "user input section" located adjacent to a battery and the engine, where the "user input" is located in the opening between the sides of the housing.  (*Id.*)

The claim recites only generic hardware components:  a "camera," an "engine section," "a user input section," a "battery," and recites that these components are placed in or around a generic physical "housing."  (*Id.*)  It recites no technical detail for *how* these components should be arranged or connected to provide smart phone functionality.  The specification also fails to describe

the claimed invention in any technical detail. It describes the components of the claimed device as strictly conventional and generic. (*Id.* at 5:43-45 (housing may be a "one-piece metal tubular housing"); 3:63-65 (engine section may include "a printed circuit board, a transceiver, a processor, and a memory, among other components"); 3:54-57 ("any suitable user input section could be provided")). The specification describes different physical arrangements of the components in non-technical terms, describing an arrangement in which the engine is located above or adjacent to the battery, depending on the size of the battery used, *e.g.*, whether it is "thinner and wider" or is "about half the width of the tubular housing member." (*Id.* at 3:63-4:7; 5:49-55; Figs. 11-13.)

### E.     The '818 Patent

The '818 patent is titled "Method for Coding Sequences of Pictures," and is generally directed to the use of "parameters" in video coding. ('818 pat. at cover.) Nokia asserts claim 6 of the '818 patent in this case and claim 1 of the '818 patent in the 1236 Matter. (*See* 1232 Matter, Am. Compl. ¶ 117; Exs. 15A-B; 1236 Matter, Compl. D.I. 1 ¶ 245; Ex. 6.) Amazon has filed a motion to dismiss the claims of the '818 patent for lack of patentable subject-matter in the 1236 matter (1236 Matter, D.I. 17), and incorporates the facts recited in that motion related to the '818 patent (referred to there as the "Parameter Set Patent") as if fully set forth herein. As discussed below, claim 6 is no different for purposes of ineligibility than claim 1 analyzed in that motion.

## V.     ARGUMENT

The Supreme Court in *Alice* directs courts to take a two-step approach when assessing patent validity under Section 101. *Alice*, 573 U.S. 208, 217-18. At Step One, a court should consider whether the claims are directed to an abstract idea. *Id.* If so, the court should proceed to Step Two and decide whether the claims add an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself.'" *Id.* at 217-18 (quotation omitted). The Federal

Circuit has repeatedly recognized that courts may determine patent eligibility on a Rule 12(b)(6) motion. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).

The patents challenged on this motion are directed to basic ideas—routing messages using identifiers, providing access to application information on a locked device, combining different types of data, arranging components within a physical housing, and encoding and decoding video data by classifying data in the pictures—and propose to implement them using a combination of existing and generic computing components and processes and purely functional limitations.[3] Such claims do not provide a specific technological solution and are abstract and non-inventive as a matter of law. *See Two-Way Media*, 874 F.3d at 1337; *Affinity*, 838 F.3d at 1269, 1271; *Intell. Ventures I*, 838 F.3d at 1316. The Court should hold the patents invalid for failure to claim patent-eligible subject matter under § 101.

### A. The '254 Patent is patent-ineligible.

At *Alice* Step One, courts examine the "'focus' of the claims" or their "character as a whole" to determine whether they are directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2018). Here, claim 1 of the '254 patent requires (1) registering both an application identifier for each application on a device, as well as the address corresponding to the user's device; (2) receiving a message with an application identifier corresponding to the application to which the message is directed; and (3) directing the message to the appropriate

---

[3] Nokia's conclusory complaint allegations related to patent eligibility cannot save its claims. *Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory."); *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *4 (Fed. Cir. Jan. 9, 2024) ("Simply including allegations of inventiveness in a complaint, detached from what is claimed or discussed in the patent, does not ensure that the complaint will survive the pleading stage.").

application. Thus, the claim is directed to the idea of routing messages to a registered address using identifiers.

The idea of routing messages is a fundamental human practice, akin to sorting mail and directing it to residents in an apartment building or tenants of an office building. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018) ("well-established methods of organizing human activity" that can be "performed in the human mind, or by a human using a pen and paper" are abstract); *Intell. Ventures I*, 838 F.3d at 1317 (claim directed to email processing software abstract and comparable to a "brick-and-mortar post office"). For example, it is common for a corporate mailroom to direct received letters to specific offices based on which office is assigned to the recipient indicated on the letter. Indeed, courts have repeatedly held claims directed to "routing information using result-based functional language" to be abstract. *Two-Way Media*, 874 F.3d at 1337; *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) ("communicating requests to a remote server and receiving communications from that server, i.e., communication over a network" is abstract); *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) ("sending and receiving information" to perform tasks such as "receiving a request for information and delivering records" is abstract); *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1147 (N.D. Cal. 2017) ("selecting the best message routing option" is "directed to fundamental human activity, applied to a specific technical environment").

The claim is also abstract because it claims functional results—"receiving [the] incoming message" that "includes the registered application identifier" of an application running on the terminal and "directing the incoming message" to the application—without reciting any specific technological solution to achieve "these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337. For example, the claim does not specify how the second registering step, associating the

application identifier and the contact address of the terminal with the address of record, is used in the receiving or directing steps. Nor does the claim specify how the message arrives at the terminal or how messages are directed to an application. The claim is thus abstract at *Alice* Step One.[4]

The claim fails also at *Alice* Step Two, as it recites no inventive concept. It does not claim any new hardware or special programming, and the claim is silent about *how* the claimed functions are performed or implemented. *See, e.g.*, *Affinity*, 838 F.3d at 1268; *Hawk Tech. Sys., LLC v. Castle Retail, LLC,* 60 F.4th 1349, 1358 (Fed. Cir. 2023) (holding claims "only use[] generic functional language" to achieve the purported solution" as non-inventive). It thus claims the basic steps of receiving and directing a message using an identifier, which are abstract ideas that cannot supply an inventive concept. *See Two-Way Media*, 874 F.3d at 1337 (claim reciting processing, routing, and controlling data non-inventive); *Erie*, 850 F.3d at 1331 ("receiving transmitted data over a network" non-inventive); *see also id.* at 1327 (creation of an index to search and retrieve information is abstract). The claim step requiring registering and storing the associations of the "contact address of the terminal" and the "application identifier" with the "address of record" does not supply an inventive concept either; it is simply a "preexisting practice" that is "insignificant post-solution activity." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244-45 (Fed. Cir. 2016); *see also*, *Erie*, 850 F.3d at 1327 (creation of an index to search and retrieve information). Nor is there anything inventive about the ordered combination of limitations: a message must first be

---

[4] The "registration" limitations of the claim do not change its abstract character. Just as post offices register addresses of people for use in sorting and delivering mail, devices maintain registries of applications, organizations maintain registries of members, and so on. The idea of registration is inherent to the concept of routing. Moreover, the registered address of the terminal/user of record is not even used for receiving and directing messages in the claim. Thus, the "registration" step amounts to nothing more than generic storage of information, which the Federal Circuit has held abstract and ineligible as a matter of law. *See, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1366 (Fed. Cir. 2018) (invalidating claims "directed to the abstract idea of parsing, comparing, and storing data").

received before it can be directed to a recipient, and the message must include an application identifier before it can be directed to the appropriate application. *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (no inventive ordered combination where components "behave exactly as expected according to their ordinary use"); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1018 (Fed. Cir. 2017) (combination of generic computer components employed in a customary manner non-inventive). Claim 1 of the '254 patent thus fails both steps of the *Alice* test and is invalid under § 101.

## B. The '741 Patent is patent-ineligible.

Asserted claim 11 of the '741 patent requires the display of an object related to an application and enabling the user to determine a state, function or utility of the application during locked mode. ('741 pat. at cl. 11.) In other words, it is directed to the idea of providing access to application information on a locked device. But it does not provide any specific technological solution to achieve this result.[5] *Two-Way Media*, 874 F.3d at 1337. The claim does not provide any new touch screen or mobile device. It does not provide any special programming or algorithm for displaying an object corresponding to an application or selecting it in locked mode. Nor does it describe how to enable selection of the object or how to determine the information to provide in locked mode. It "merely claim[s] the resulting systems," and is therefore abstract. *Apple*, 842 F.3d at 1241; *see also, e.g.*, *DigiMedia Tech, LLC v. ViacomCBS Inc.*, 592 F. Supp. 3d 291, 299-300 (S.D.N.Y. 2022) (claims for "providing preview summaries of video or audio programming

---

[5] This claimed invention is also abstract because it is analogous to the human activity of previewing a message—*e.g.*, examining a letter to determine its contents—without opening it. *Intell. Ventures I,* 838 F. 3d at 1314 (holding claims directed to filtering email as abstract, as "it was [a] long-prevalent practice for people . . . to look at an envelope and discard certain letters . . . based on characteristics of the mail.").

over a network" abstract as they "use highly functional, result-oriented language to describe their objectives, without explaining how those objectives are accomplished.").

The Federal Circuit's opinion in *Int'l Bus. Machines Corp. v. Zillow Grp., Inc*., 50 F.4th 1371, 1378 (Fed. Cir. 2022) is instructive. There, the challenged claims were directed to a map interface displaying a "limited data set" based on a user selection. *Id.* The Federal Circuit held the asserted map interface claims abstract and invalid, distinguishing them from the user interface claims upheld by the same court in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc*., 880 F.3d 1356 (Fed. Cir. 2018), because they were results-oriented and only "describ[ed] required functions (presenting, receiving, selecting, synchronizing), without explaining how to accomplish any of the tasks," *IBM*, 50 F.4th at 1378. Like the '741 patent here, the specification of the challenged patent in *IBM* did "not discuss improvements to specific types of device screens, only generic displays and computer systems." *Id.* at 1381; *see* '741 patent at 7:39-42 ("The aspects of the disclosed embodiments can be implemented on any device that includes a user interface for the display and accessing of information"). Similarly, the claims here are also "directed to limiting and coordinating the display of information based on a user selection" and are similarly "results-based," (*id.* at 1378), to the extent that "they amount[] to patenting the patent-ineligible concept itself," *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344 (Fed. Cir. 2018); *see also GREE, Inc. v. Supercell Oy*, 855 F. App'x 740, 743 (Fed. Cir. 2021) ("Here, by contrast [to *Core Wireless*], the user interface is described without specificity at a generic level."). The '741 patent claims are abstract and invalid for the same reasons.[6]

_____

[6] Nokia touts the purported benefit of the claimed method in the complaint, alleging that it "facilitates easier access to application functionality while maintaining the benefits of a locked state." (Am. Compl. ¶¶ 2, 77.) But whereas here "the patent does not articulate any specific technological improvement," simply "improving a user's experience," *e.g.*, by providing "quick

The claim also fails at *Alice* Step Two. As discussed above, asserted claim 11 recites a result—accessing an object associated with an application on a device in locked mode and providing information about the application—in purely functional terms without explaining *how* to implement or perform this function. Such "purely functional" limitations cannot provide an inventive concept. *Alice*, 573 U.S. at 226. And the specification admits that providing information on a lock screen was strictly conventional as of the date of the patent. ('741 pat. at 1:23-28; *see also* Am. Compl. ¶ 275.) Indeed, the only difference between the claim and the abstract idea itself—providing information about an application in locked mode—is that the claim requires displaying a generic object to be selected by the user on a locked device. However, displaying an object for the user to select is a conventional step "specified at a high level of generality" and "not enough to supply an inventive concept." *Alice*, 573 U.S. at 222; *see also Elec. Power Grp.,* 830 F.3d at 1355 ("Merely requiring the selection and manipulation of information . . . by itself does not transform the otherwise-abstract processes of information collection and analysis"). And limiting an abstract idea "to a particular technological environment" like a locked device does not save it from ineligibility. *Alice*, 573 U.S. at 223.

Nor does the claim recite an inventive ordered combination, as the claim elements are "organized in a completely conventional way." *Two-Way Media*, 874 F.3d at 1341. To enable the user to select an object the object must be displayed first, then the selection triggers determining the information to show. Thus, the ordered combination of claimed elements in claim 11 of the '741 patent is not inventive. The claim fails both steps of the *Alice* test and is invalid under § 101.

---

and easy access to low-level data," does not make the claims non-abstract at *Alice* Step One. *DigiMedia*, 592 F. Supp. 3d at 301 (citing *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020)).

**C.      The '693 Patent is patent-ineligible.**

Claim 1 of the '693 patent is drawn to the idea of combining and processing data—*i.e.*, static and dynamic data—by transmitting data to different "processing mechanisms." ('693 pat. at cl. 1.)  In other words, the claim is drawn to the abstract idea of combining and processing different types of data.  The Federal Circuit has repeatedly held claims related to basic data processing steps to be abstract and ineligible.  *See Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("gathering and combining data" and "manipulat[ing] existing information" is abstract); *Elec. Power Grp.*, 830 F.3d at 1353 ("collecting" and "analyzing" data is abstract); *Affinity*, 838 F.3d at 1269 (Fed. Cir. 2016) ("delivering" data is abstract); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) ("organizing, displaying, and manipulating data" is abstract).  Sorting and manipulating data to integrate different types of data is also abstract.  *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (idea of data integration on a computer is abstract).  And neither the claim nor the specification explains *how* to combine and process these different types of data; it recites only the result of static and dynamic processing.  Such claims, which recite results of "perform[ing] an abstract idea on a generic computer," without any means to achieve them, are abstract as a matter of law.  *BSG Tech*, 899 F.3d at 1285.

The claim is also non-inventive at *Alice* Step Two.  The claims simply recite generic computing steps:  "transferring . . . at least one data object," performing unspecified "processing of the at least one data object," and "transferring the at least one data object back." ('693 pat. at cl. 1.)  The claim is silent about *how* these functions are performed or implemented.  *See Affinity*, 838 F.3d at 1268; *Hawk Tech.*, 60 F.4th at 1358.  The specification fares no better; it describes the claimed functions by reference to results, providing no implementation detail.  (*See* '693 pat. at 7:21-22; 8:9-10; 12:50-51; 14:18-19.)  The steps of "determining . . . at least one processing

element" and "marshalling . . . of the at least one processing element as at least one data object," are similarly functional results, "specified at a high level of generality." *Alice*, 573 U.S. at 222. They cannot supply an inventive concept as a matter of law.

Nor does the claim recite an inventive ordered combination, as it recites the claimed functions in a strictly conventional and logical order: first, the data object is prepared or converted into a format suitable for transferring or storage (the claimed "marshalling"); then, once the data object is prepared, it is transferred to the destination for processing; then, it is returned to the user. This logical and conventional ordering cannot supply an inventive concept. *TLI*, 823 F.3d at 615. The asserted claim of the '693 patent thus fails at both steps of the *Alice* test and is invalid.

### D.      The '602 Patent is patent-ineligible.

Claim 1 of the '602 patent recites a "portable electronic device," but is really directed to a basic arrangement of components within a physical housing.[7]  The basic concept of arranging components is abstract.  *See, e.g.*, *F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, No. 20-1194, 2022 WL 17177621, at *10 (D. Del. Nov. 17, 2022), *appeal dismissed*, No. 2023-1304, 2023 WL 2965590 (Fed. Cir. Apr. 17, 2023) ("physically redistributing or rearranging exercise stations in fitness studios was well known and conventional"); *GREE, Inc. v. Supercell Oy*, 834 Fed. Appx. 583, 588 (Fed. Cir. 2020) ("creating and applying a template of positions to… game contents" is abstract); *see also*, *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1150 (Fed. Cir. 2016) (in field of circuit design, generating a "hardware component description" of the circuit from a functional description is a "mental process" and thus an abstract idea).  The claim is also abstract because it does not disclose a technological solution; the purported solution is simply to physically

---

[7] The fact that the claim recites "physical components" does not change its abstract character. *See TLI*, 823 F.3d at 611 (claim that recited "a telephone unit" and "server" "merely provide[d] a generic environment in which to carry out the abstract idea").

arrange components within a housing and invoking only "generic processes and machinery." *Two-Way Media*, 874 F.3d at 1337.

Although courts have held that claims directed to an inventive arrangement of components may be non-abstract when the arrangement achieves "performance improvements of the assembled devices," nothing in the claims or specification suggests that the claimed arrangement improves performance at all. *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, 223 F. Supp. 3d 1026, 1034-35 (C.D. Cal. 2016) (holding claims directed to an arrangement of memory chips "which enables the memory cards to be used in narrower places" and to "fit more memory chips on a card" non-abstract). To the contrary, in its complaint Nokia admits that the purported advantage of the '602 patent is purely aesthetic: addressing "a desire for an architecture for an ultrathin fold product . . . which can maintain aesthetic balance in proportions."[8] (Am. Compl. ¶¶ 262-63.)

The asserted claim of the '602 patent is also non-inventive at *Alice* Step Two. The specification describes the various recited claim limitations as generic computing components. (*See, e.g.*, '602 pat. at 5:43-45 ("one-piece metal tubular housing"); 3:63-65 (engine section includes "a printed circuit board, a transceiver, a processor, and a memory, among other components"); 3:54-57 ("any suitable user input section could be provided").) Such generic components cannot supply an inventive concept. *Alice*, 573 U.S. at 223 (generic computer technology non-inventive).) And the combination of these elements amounts to an arrangement within a physical housing, which is the abstract idea itself; it cannot supply the inventive concept. *ChargePoint,* 920 F.3d at 774 (Fed. Cir. 2019) ("This, again, merely mirrors the abstract idea itself

---

[8] While it is possible claims that address aesthetic concerns could be non-abstract, the claims here do not recite a technological solution or improvement to computing technology, and do not result in any performance improvement.

and thus cannot supply an inventive concept.").  The asserted '602 patent claim thus fails both steps of the *Alice* test and is invalid under § 101.

### E. The '818 Patent is patent-ineligible.

As explained in Amazon's motion filed in the 1236 Matter, claim 1 of the '818 patent is directed to the abstract idea of encoding and decoding video data by classifying parameters in a picture, and does not recite any technological solution for achieving the aspirational result of classifying image data.  (1236 Matter, D.I. 17.)  The only material difference between claim 1, which Amazon addresses in its motion in the 1236 Matter, and claim 6, which Nokia asserts in this case, is that claim 1 requires an *encoder* that encodes a sequence of pictures for transmission using parameters, whereas claim 6 requires a *decoder* that decodes the encoded sequence of pictures using the parameters.  ('818 pat. at cl. 1, 6.)  Claim 1 of the '818 patent requires "defining" a "sequence parameter set," "defining" "a picture parameter set," and "defining" a "picture parameter value [that] remain[s] unchanged at least in all slice headers of a picture" for encoding a picture sequence.  (*Id.* at cl. 1.)  Claim 6 requires decoding a picture sequence encoded according to claim 1 by "recognizing" a "sequence parameter set," "recognizing" a "picture parameter set," "forming" a second "picture parameter value [that] remain[s] unchanged in all slice headers of one picture," and "using" that picture parameter value "in decoding."  (*Id.* at cl. 6.)  For the reasons set forth in Amazon's motion to dismiss in the 1236 Matter, the Court should hold the '818 patent claims ineligible and invalid under § 101.

### F. The Court should hold all claims of the challenged patents invalid under § 101.

Nokia's complaint alleges infringement of the specific claims analyzed herein.  (Am. Compl. ¶¶ 237-38, Ex. 20 ('254 patent); *id.* ¶¶ 281-83, Ex. 23 ('741 patent); *id.* ¶¶ 254-55, Ex. 22 ('693 patent); *id.* ¶¶ 266-67, Ex. 21 ('602 patent); *id.* ¶ 117, Exs. 15A-B ('818 patent).)  However,

to the extent Nokia later asserts additional claims from the challenged patents, those claims are patent-ineligible for the same reasons that the representative claims of those patents, discussed above, are ineligible.  As the Federal Circuit has held, "[c]ourts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."  *Berkheimer*, 881 F.3d at1365 (Fed. Cir. 2018).  Here, nothing in the amended complaint suggests that the other claims of the asserted patents have "distinctive significance" from the asserted claims.  Nor do the claims themselves reflect any meaningful distinction.  Because Nokia has not, and cannot, make any such allegations, the Court should treat the claims analyzed herein as representative and hold that all claims of the '254, '741, '693, '602, and '818 patents are patent-ineligible.

### G.    The Court should deny leave to amend.

No amendment to the complaint can transform the claims into patent-eligible subject matter.  Because any amendment would be futile, the Court should deny any request by Nokia to amend its complaint.  *Wireless Discovery LLC v. Coffee Meets Bagel, Inc.*, 654 F.Supp.3d 347, 359 (D. Del. 2023) (denying leave to amend, as "[t]he claims of the patents say what they say").

## VI.    CONCLUSION

For the foregoing reasons, the Court should hold the claims of the '254, '741, '693, '602, and '818 patents invalid under § 101, and dismiss Counts III, VIII, IX, X, and XI of the amended complaint with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jeremy A. Tigan

OF COUNSEL:

J. David Hadden
Saina S. Shamilov
Ravi R. Ranganath
Allen Wang
Vigen Salmastlian
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
(650) 988-8500

Todd R. Gregorian
Ethan M. Thomas
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
(415) 875-2300

January 19, 2024

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants Amazon.com, Inc.
and Amazon.com Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 19, 2024, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                    *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington DE  19801
*Attorneys for Plaintiffs*

Warren H. Lipschitz, Esquire                               *VIA ELECTRONIC MAIL*
Alexandra F. Easley, Esquire
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1200
Dallas, TX  75224
*Attorneys for Plaintiffs*

R. Mitch Verboncoeur, Esquire                              *VIA ELECTRONIC MAIL*
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX  78701
*Attorneys for Plaintiffs*

Josh Newcomer, Esquire                                     *VIA ELECTRONIC MAIL*
MCKOOL SMITH, P.C.
600 Travis Street, Suite 7000
Houston, TX 77002
*Attorneys for Plaintiffs*

Kevin Burgess, Esquire                                     *VIA ELECTRONIC MAIL*
MCKOOL SMITH, P.C.
104 East Houston Street, Suite 300
Marshall, TX  75670
*Attorneys for Plaintiffs*

Theodore Stevenson, III, Esquire                    *VIA ELECTRONIC MAIL*
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, TX  75201
*Attorneys for Plaintiffs*

John D. Haynes, Esquire                             *VIA ELECTRONIC MAIL*
Nicholas T. Tsui, Esquire
Shawn P. Gannon, Esquire
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309
*Attorneys for Plaintiffs*


                              */s/ Jeremy A. Tigan*
                              _____
                              Jeremy A. Tigan (#5239)