## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION, AND NOKIA TECHNOLOGIES OY, | C.A. No. 23-1232 (GBW) |
| Plaintiffs, | |
| v. | |
| AMAZON.COM, INC., AND AMAZON.COM SERVICES LLC. | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION AND OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

Dated: March 15, 2024

Warren H. Lipschitz (admitted *pro hac vice*)
Alexandra F. Easley (admitted *pro hac vice*)
**MCKOOL SMITH, P.C.**
300 Crescent Ct. Ste. 1200
Dallas, TX 75224
Tel.: (214) 978-4000
wlipschitz@mckoolsmith.com
aeasley@mckoolsmith.com

R. Mitch Verboncoeur (admitted *pro hac vice*)
**MCKOOL SMITH, P.C.**
303 Colorado St Suite 2100
Austin, TX 78701
Tel.: (512) 692-8700
mverboncoeur@mckoolsmith.com

Josh Newcomer (admitted *pro hac vice*)
**MCKOOL SMITH, P.C.**
600 Travis St., Suite 7000
Houston, Texas 77002
Tel.: (713) 485-7300
jnewcomer@mckoolsmith.com

Kevin Burgess (admitted *pro hac vice*)

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan ( Bar No. 5165)
**FARNAN LLP**
919 N. Market St. 12th Floor
Wilmington DE 19801
Tel.: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Theodore Stevenson, III (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
2200 Ross Ave. #2300
Dallas, TX 75201
Tel.: (214) 922-3400
ted.stevenson@alston.com

John D. Haynes (admitted *pro hac vice*)
Nicholas T. Tsui (admitted *pro hac vice*)
Shawn Gannon (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 881-7000
john.haynes@alston.com
nick.tsui@alston.com
shawn.gannon@alston.com

**MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.**
104 East Houston St., Suite 300
Marshall, Texas 75670
Tel.: (903) 923-9000
kburgess@mckoolsmith.com                    *Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS..................1

II.     SUMMARY OF ARGUMENT ..................................................................................1

III.    STATEMENT OF FACTS ........................................................................................2

        A.      The '602 Patent ...........................................................................................2

        B.      The '254 Patent ...........................................................................................2

        C.      The '741 Patent ...........................................................................................3

        D.      The '693 Patent ...........................................................................................3

        E.      The '818 Patent ...........................................................................................4

IV.     ARGUMENT .............................................................................................................5

        A.      The '602 Patent is Patent-Eligible .............................................................5

                1.      The '602 Patent is not abstract ........................................................5

                2.      The '602 Patent claims inventive concepts......................................7

        A.      The '254 Patent is Patent-Eligible .............................................................8

                1.      The '254 Patent is not abstract ........................................................8

                2.      The '254 Patent claims inventive concepts......................................9

        B.      The '741 Patent is Patent-Eligible ...........................................................10

                1.      The '741 Patent is not abstract ......................................................10

                2.      The '741 Patent claims inventive concepts....................................14

        C.      The '693 Patent is Patent-Eligible ...........................................................15

                1.      The '693 Patent is not abstract ......................................................15

                2.      The '693 Patent claims inventive concepts....................................18

        D.      The '818 Patent is Patent-Eligible ...........................................................18

                1.      Amazon's "incorporation by reference" is improper.................18

                2.      Claim 6 of the '818 Patent is not ineligible .................................20

V.      CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2019).........................................................................2, 10

*AgroFresh Inc. v. Essentiv LLC*,
2020 U.S. Dist. LEXIS 222898 (D. Del. Nov. 30, 2020) ....................................19

*Ancora Techs., Inc. v. HTC America, Inc.*,
908 F.3d 1343 (Fed. Cir. 2018)...........................................................................17

*Berkheimer v. HP, Inc.*,
881 F.3d 1360 (Fed. Cir. 2018).........................................................................1, 10

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019).......................................................................10, 18

*Cooperative Ent'mt Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) .......................................................................1, 2, 8

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018).............................................................11, 12, 13, 14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014).......................................................................17, 20

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)...........................................................................16

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016).......................................................................11, 16

*Flintkote Co. v. Aviva P.L.C.*,
2015 U.S. Dist. LEXIS 37482 (D. Del. Mar. 25, 2015) ......................................19

*FYF-JB, LLC v. Pet Factory, Inc.*,
410 F. Supp. 3d 912 (N.D. Ill. 2019) .....................................................................6

*ID Image Sensing LLC v. OmniVision Techs., Inc.*,
Civil Action No. 20-136-RGA, 2020 U.S. Dist. LEXIS 220189 (D. Del. Nov. 24,
2020)........................................................................................................................6

*In re TLI Communs. LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)................................................................................9

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) ...............................................................................14

*Nokia Corp., v. Amazon.com, Inc.*,
    No. 23-1236-GBW ...............................................................................................19

*Packet Intelligence LLC v. NetScout Sys.*,
    965 F.3d 1299 (Fed. Cir. 2020)...............................................................................17

*Peloton Interactive, Inc. v. Echelon Fitness, LLC*,
    2020 U.S. Dist. LEXIS 118945, 2020 WL 3640064 (D. Del. July 6, 2020) ...........15

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
    223 F. Supp. 3d 1026 (C.D. Cal. 2016) .........................................................6, 7, 8

*PPS Data v. Jack Henry & Assocs.*,
    404 F. Supp. 3d 1021 .............................................................................................9

*Quality Innovative Prods., LLC v. Brand 44, LLC*,
    No. 18-cv-00369-NYW, 2018 U.S. Dist. LEXIS 171789 (D. Colo. Oct. 4, 2018) .................6

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020)..........................................................................9, 10

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    675 Fed. App'x 1001 (Fed. Cir. 2017)....................................................13, 15, 20

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011)...............................................................................14

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020)................................................................................9

## STATUTES

35 U.S.C. § 101................................................................................................1, 6, 7, 8

## OTHER AUTHORITIES

Rule 12 ............................................................................................................1, 19

## I.        STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Nokia Corporation and Nokia Technologies Oy (collectively, "Nokia") filed their 143-page First Amended Complaint ("FAC") on October 31, 2023, alleging, among other things, infringement of 11 patents by Amazon.com, Inc.'s and Amazon.com Services, LLC ("Amazon"). Nokia's FAC supported by 25 exhibits spanning over 1500 pages, details the groundbreaking novelty of Nokia's patented technologies and Amazon's corresponding rampant infringement and flagrant misconduct. In response, Amazon filed its partial motion to dismiss alleging that five of the eleven asserted patents are invalid under 35 U.S.C. § 101 (D.I. 18).

Amazon's motion should be denied. Amazon's oversimplifications and cursory treatment of the five challenged patents fall far short of Amazon's burden of showing by clear and convincing evidence that the challenged claims are patent ineligible, particularly given the Federal Circuit's repeated recognition that "[d]etermining whether the [invention] is well-understood, routine, or conventional is a question of fact that cannot be resolved at the Rule 12(b)(6) stage." *See*, *e.g.*, *Cooperative Ent'mt Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 133 (Fed. Cir. 2022).

## II.       SUMMARY OF ARGUMENT

1.        Patent eligibility is a question of law that depends on underlying issues of fact. *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). "[P]atent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Id.*

2.        The challenged patents are not directed to abstract ideas. Instead, the challenged patents are directed to subject matter that is analogous to subject matter that the Federal Circuit has routinely found to be non-abstract. The Court may deny Amazon's motion on this basis alone. The challenged patents each contain inventive concepts, with claims directed to specific technical solutions that were not well-understood, routine, or conventional at the time. Courts should deny

1

motions to dismiss when there are well-pled allegations that claims are directed to an inventive concept that was not well-understood, routine, or conventional. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2019); *Coop. Entm't*, 50 F.4th at 131.

3.      Amazon treats claims of the challenged patents as representative when they are not. This is an additional reason to deny Amazon's motion. *See Berkheimer*, 881 F.3d at 1365.

## III.    STATEMENT OF FACTS

### A.      The '602 Patent

The '602 Patent relates to the form factor of mobile devices, like phones and tablets, for which mechanical thinness was both a key priority and a significant challenge. Achieving such thinness required adjustments to the device's feature set and industrial design ('602 Patent, 1:23-39). The '602 Patent provides specific, concrete ways to achieve a thinner device using a novel arrangement and configuration of internal components, such as: "an engine section comprising a printed circuit board, a transceiver, a processor and a memory; a battery located adjacent the engine section; and a user input section comprising a keypad located directly above the engine section and the battery" (D.I. 5, ¶ 263 (citing '602 Patent, 1:65-2:5)). This novel apparatus provides specific technological improvements to the structure of portable electronic devices, including, for example, "the configuration of the side-by-side engine/battery [which] allows the battery and the engine to have a practical design thickness and still provide a reduced thickness … as compared to conventional flip-phones" (*id.*, ¶ 264 (citing '602 Patent, 4:2-10)).

### B.      The '254 Patent

Many user devices, such as tablets and phones, have multiple applications that receive messages. In 2003, when the '254 Patent's invention was conceived, a conventional approach used different protocols for each application on a device. This was inefficient and wasted resources, particularly because signaling protocols such as Session Initiation Protocol ("SIP") require

resources to maintain separate listening processes for notifications of incoming communications over different protocols ('254 Patent, 1:36-66). The '254 Patent provides specific technological improvements that yield more efficient processing of application messages (D.I. 5, ¶ 233). For example, at a high level, the '254 Patent claims: registering an application identifier for the applications on a user's device, receiving messages at the user device, and directing the message based on the registered application identifier. The patent's approach requires fewer resources than conventional technology (D.I. 5, ¶¶ 235-236; '254 Patent, 6:41-45). Four of the six independent claims provide specific improvements to the pre-existing SIP ('254 Patent, cls. 6, 16, 27, 29).

### C.    The '741 Patent

User devices such as tablets and phones generally include a "locked mode" to prevent inadvertent activation of a device's applications (D.I. 5, ¶ 275 (citing '741 Patent, 1:23-28)). Users unlock their device with, for example, a fingerprint sensor or key combination. Until an unlocking action is taken, the device ignores user input. Prior to the '741 Patent, conventional technology was not able to allow interaction with applications while the device was locked, nor did it provide direct access or shortcuts to specific applications while locked (D.I. 5, ¶ 276). The '741 Patent claims a technical improvement that provides a better user experience via "the quick activation of high level user interface elements for passive information gathering, while the device remains in locked mode" ('741 Patent, 7:11-13). For example, each independent claim recites (1) "causing a display of a device to display an object, relating to an application, when the device is in a locked mode," and (2) "enabling a user to select the object while the device is in the locked mode, in order to determine a state, function or utility of the application without fully activating the application while the device remains in the locked mode" (*id.*, cls. 1, 11, 17).

### D.    The '693 Patent

Providers of devices like tablets and phones develop many types of applications and

services as a way of attracting customers. These applications and services rely on many types of data with different storage and processing needs. Conventional methods segregated storage and processing based on whether the data was static or dynamic (D.I. 5, ¶ 248 (citing '693 Patent, 1:18-29). Static data may be collected over long periods of time, such as user behavior or service usage ('693 Patent, 1:22-29). This can result in huge databases that are processed using predetermined scheduling (*id*., 3:62-67). By contrast, dynamic processing may involve real-time data like social networking feeds or location tracking (*id*., 1:27-29). Conventional technology could not effectively combine features of both system types (D.I. 5, ¶ 247 (citing '693 Patent, 1:18-29)). The inventor of the '693 Patent provided technical improvements in the way data is processed to provide users with more accurate and comprehensive information when using applications and services of both types ('693 Patent, 3:37-38). The '693 Patent's "best of both worlds" solution includes both dynamic and static processing mechanisms and provides specific technical improvements that create a novel data object taking advantage of both dynamic and processing mechanisms.

### E.    The '818 Patent

The '818 Patent relates to video encoding and decoding. In one approach, prior to the '818 Patent, parameters relevant to a given "slice" of video were transmitted in a slice header, while certain others—sequence parameters and picture parameters—were transmitted in a *single* parameter set ('818 Patent, 2:48-56). This single parameter set concept was inefficient because, in order to signal a single different parameter value, the entire parameter set had to be transmitted again even though all of the other parameter values were the same (D.I. 5, ¶ 112). Transmitting and receiving multiple substantially identical parameter sets with repetitive information was inefficient and caused latency and reliability issues ('818 Patent, 3:17-28). The'818 Patent claims a specific technical improvement to those prior video coding methods by providing a novel data structure of distinct sequence and picture parameter sets, where "parameters which are not allowed

4

to change in a coded video sequence are included in the sequence parameter set," parameters that are allowed to change in every picture were included in a separate picture parameter set, and "[p]arameters whose value may change in every slice or whose value is likely to change in every picture, are included in the slice header" (*see, e.g.*, *id*., 4:15-29). The inventions of the '818 Patent—utilizing separate sequence and picture parameter sets rather than a single, all-inclusive parameter set, with at least one picture parameter value remaining unchanged in all slice headers of a picture—are technological solutions that improve video coder functionality.

## IV.   ARGUMENT

### A.   The '602 Patent is Patent-Eligible

#### 1.   The '602 Patent is not abstract.

The independent claims[1] are directed to novel electronic devices and recite specific and discrete *structural limitations* directed to the *physical composition* of said electronic devices ('602 Patent, cls. 1, 15, 22). Amazon is wrong that "the patent purports to address 'aesthetic' concerns, not to solve a technological problem" (D.I. 19, 8). The claims are specifically directed to a "new and useful . . . machine . . . or any new and useful improvement thereof." 35 U.S.C. § 101. Amazon fails to identify any authority holding that claims directed to tangible devices are invalid under 35 U.S.C. § 101. "[A] 'machine,' which is patent-eligible under § 101, is a 'concrete thing, consisting of parts, or of certain devices and combination of devices.'" *Polaris Innovations Ltd. v. Kingston Tech. Co.*, 223 F. Supp. 3d 1026, 1032, 1035 (C.D. Cal. 2016) (citing *Digitech Image Techs., LLC*

---

[1] Amazon does not demonstrate that claim 1 is representative. The three asserted independent claims have varying scope. Claims 15 and 22 include *structural* limitations not present in claim 1. Claim 15 adds the limitation of an opening between the exterior lateral sides of the portable electronic device. Claim 22 limits the scope of the claimed machine to mobile phones. Because Amazon fails to analyze the separate physical structures in two of the three independent claims of the '602 Patent, it cannot meet its burden to show all claims of the '602 Patent are patent-ineligible.

*v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348-49 (Fed. Cir. 2014); other citations omitted). Like in *Polaris*, here, "the cases [defendant] cites as examples of patent-ineligible claims involving computer hardware all involve patented *processes* running on what the courts found to be generic hardware… [T]he distinction is a significant one, and … is dispositive on the issue raised in [the] motion. Because the [patents] pertain to machines as opposed to abstract processes, there is no need to proceed to the second step of the *Alice/Munro* [sic] analysis—they describe patentable subject matter under § 101." *Id.* (emphasis in original).[2]

Despite Amazon's conclusory allegations, the '602 Patent is not directed to an abstract "concept of arranging components," nor does it claim a method for organizing or sorting existing articles. Instead, it claims a portable electronic device with a specific arrangement of hardware (e.g., "a one piece housing" with "a cut out" containing "a camera", "a battery," "an engine section," and "a user input section") that results in tangible improvements over the prior art (such as decreased thickness).[3] And decreased thickness has technical benefits that extend beyond mere aesthetics (D.I. 5, ¶¶ 263-264). Amazon's sole authority relating to the arrangement of hardware components actually supports subject-matter eligibility here. In *Polaris*, the court held that although the asserted patent did "not modify any of the conventional computer components

---

[2] Indeed, courts regularly find that claims which are directed to tangible devices *are not abstract*. *See, e.g., ID Image Sensing LLC v. OmniVision Techs., Inc.*, Civil Action No. 20-136-RGA, 2020 U.S. Dist. LEXIS 220189, at *9 (D. Del. Nov. 24, 2020); *FYF-JB, LLC v. Pet Factory, Inc.*, 410 F. Supp. 3d 912, 916-19 (N.D. Ill. 2019); *Quality Innovative Prods., LLC v. Brand 44, LLC*, Civil Action No. 18-cv-00369-NYW, 2018 U.S. Dist. LEXIS 171789, at *18 (D. Colo. Oct. 4, 2018).

[3] "Unlike conventional telephones which have the engine located above the battery, the configuration of the side-by-side engine/battery allows the battery and the engine to have a practical design thickness and still provide a reduced thickness 24 as compared to conventional flip-phones. The keypads are located above the engine section 30 and the battery 32, wherein the user input section 34 is located directly opposite the battery 32 without a significant portion of the engine section 30 there between" ('602 Patent, 3:63-4:10).

themselves," it "recite[d] subject matter that is eligible for patent protection under § 101" because it "document[ed] performance improvements of the assembled devices insofar as the[y] … enable[d] a memory card to maintain the same functionality in a slightly smaller space." *Polaris*, 223 F. Supp. 3d at 1033, 1035. Amazon is wrong to suggest that the thinner device in *Polaris* is inventive, while the thinner device embodied by the '602 Patent is "purely aesthetic."[4]

### 2.   The '602 Patent claims inventive concepts.

Claim 1 of the '602 Patent[5] claims a "novel portable electronic apparatus with 'an engine section comprising a printed circuit board, a transceiver, a processor and a memory; a battery located adjacent to the engine section; and a user input section comprising a keypad located directly above the engine section and the battery'" (D.I. 5, ¶ 263 (citing '602 Patent, 1:65-2:5)). "The '602 Patent therefore provides specific technological improvements to the functionality and capabilities of form factor design for portable electronic devices, including, for example, 'the configuration of the side-by-side engine/battery [which] allows the battery and the engine to have a practical design thickness and still provide a reduced thickness … as compared to conventional flip-phones'" (*id.,* ¶ 264 (citing '602 Patent, 4:2-7)). These improvements were not well-understood, routine, or conventional, as for example prior devices located the engine above the battery (*id.*, ¶¶ 265, 262). These factual allegations found in the FAC preclude granting Amazon's motion. *Coop. Entm't, Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 133 (Fed. Cir. 2022). Amazon's

---

[4] By re-designing the internal circuitry of the device, the invention of the '602 Patent provides a technical solution that lies in the useful, novel, and non-obvious arrangement of components. The fact that a resulting device may be (subjectively) aesthetically pleasing does not detract from its utility. Amazon cannot identify any authority linking subject-matter eligibility under 35 U.S.C. § 101 to the unclaimed aesthetics of a machine.

[5] As mentioned, Amazon makes no showing that claim 1 is representative. Claims 15 and 22 include additional structural limitations not present in claim 1.

argument that "generic components cannot supply an inventive concept" misses the point that the novel *arrangement* of components is inventive. *Throughtek*, 2024 U.S. Dist. LEXIS 20139, at \*19.

Moreover, Amazon does not provide a consistent definition of the alleged "abstract idea." For step one, Amazon defined the alleged "abstract idea" as "[t]he basic concept of arranging components" (D.I. 19, 17). For step two, however, Amazon argues that the "abstract" idea is the specific "arrangement within the physical housing" (*Id*. at 18). But an arrangement in a physical housing is not an abstract idea. It is the very definition of a machine (i.e., "a concrete thing, consisting of parts, or of certain devices and combinations of devices"), "which is patent-eligible under § 101." *Polaris*, 223 F. Supp. 3d at 1032, 1035. Amazon's argument reduces to the absurd conclusion that a specific, novel, physical arrangement of components in a tangible machine is an abstract idea and thus never includes an inventive concept. No case law supports such an argument.

## A.     The '254 Patent is Patent-Eligible

### 1.     The '254 Patent is not abstract.

The '254 Patent "provides improvements over prior network communications systems that result in more efficient communication and less resource drain on hardware" (D.I. 5, ¶ 233). In its motion, Amazon overgeneralizes and asserts that claim 1 is directed to "routing messages to a registered address using identifiers," which is "akin to sorting mail and directing it to residents" (D.I. 19, 11). Claim 1 is not representative of the other claims.[6] In any event, Amazon's attempted analogy runs afoul of the Federal Circuit's repeated cautioning that, "we must be careful to avoid

---

[6] Amazon analyzes only claim 1 of the '254 Patent. Claim 1 is only one of six independent claims, each of varying scope. Because Amazon fails to acknowledge five of the six independent claims of the '254 Patent, it cannot meet its burden to show that all claims of the '254 Patent are patent-ineligible. Independent claims 6, 16, 27, and 29 each recite limitations related to the SIP signaling protocol. No SIP-related limitations are recited in Claim 1. Thus, Claim 1 is not representative of the other independent claims of the '254 Patent, and the relief sought by Amazon is, at best, limited to Claim 1. *See PPS Data v. Jack Henry & Assocs.*, 404 F. Supp. 3d 1021, 1031.

oversimplifying the claims because 'at some level, all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (citation omitted).

Amazon's comparisons to sorting mail grossly oversimplify and mischaracterize claim 1. Claim 1 is not abstract because it relates to a specific technological improvement to existing signaling protocols supporting multiple client applications that can provide different functionalities ('254 Patent, 6:27-33). Prior to the invention, conventional methods of determining the application to which a message should be sent included "provid[ing] a SIP stack for each of the different applications operating at the terminal" and "distinguish[ing] applications by different port numbers" (D.I. 5, ¶ 235 (citing '254 Patent, 1:63-2:1)). Such methods were "inefficient and utilize[d] a great deal of resources," and, in some cases, violated security requirements (D.I. 5, ¶ 235; '254 Patent, 1:66, 2:1-4). The invention "allows for greater compatibility and reduced processing need for communications systems" (D.I. 5, ¶ 236).

The Federal Circuit has routinely held that "software claims [are] patent eligible under *Alice* step one when they are directed to improvements to the functionality of a computer or network platform itself." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020) (claims "directed to a patent-eligible improvement to computer functionality, namely the reduction of latency experienced by parked secondary stations in communication systems" are not abstract); *see also, e.g.*, *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1296 (Fed. Cir. 2020) (claims "directed to improving a basic function of computer data-distribution network, namely, network security" are not abstract). Claim 1 is not directed to an abstract idea under *Alice* step one.

## 2. The '254 Patent claims inventive concepts.

Step two, reached only if step one establishes abstractness, requires "consider[ation of] the elements of each claim both individually and as an ordered combination" to determine if it recites

an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Berkheimer*, 881 F.3d at 1366. Conventional alternatives—such as maintaining separate signaling layer stacks for different applications on a device or using different port numbers were inefficient, resource-intensive, or violated security requirements (*see* D.I. 5, ¶ 235 (citations omitted); '254 Patent at 1:63-2:4). By contrast, Claim 1 enables a device to receive network traffic over a single protocol while supporting multiple client applications that can provide different functionalities. That the invention can utilize general computer, network, or Internet components does not lead to ineligibility. In *BASCOM*, the Court found claims patent-eligible even though the claims recited "generic computer, network and Internet components, none of which is inventive by itself." 827 F.3d at 1350. The Court explained that claims were patent-eligible because they recited "a specific, discrete implementation of the abstract idea of filtering content." *Id*. at 1349.

The '254 Patent claims an improvement to a signaling protocol that associates an application identifier to signaling protocol applications on a multi-application device. This invention improves the operation of computers by eliminating the need to have a separate signaling protocol stack for each application (D.I. 5, ¶ 235 (citing '254 Patent, 4:51-52)). This technological improvement demonstratives that "aspects of the claims are inventive" and therefore patent eligible. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (holding that "plausible and specific factual allegations" of inventiveness are sufficient to defeat motion to dismiss); *see also Aatrix*, 882 F.3d at 1128.

### B.    The '741 Patent is Patent-Eligible

#### 1.    The '741 Patent is not abstract.

Claim 11 of the '741 Patent is directed to enabling "the quick activation of high level user interface elements for passive information gathering, while the device remains in locked mode"

('741 Patent, 7:11-13). [7] The claims are "novel and unconventional improvements in the field of electronic device functionality and user interfaces" which provide "substantial benefits . . . when, for example, interacting with applications when the device is in a locked state" (D.I. 5, ¶ 274). The '741 Patent is directed to a problem that arises in a specific technological context (devices in a locked state) and solves a technological problem unique to that context (providing user-access to specific functionality without unlocking the device) (*id.*, ¶¶ 274-277). The Federal Circuit has held that "an improved user interface for computing devices" is *not* an abstract idea. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018).[8] Here, the challenged claims are substantially similar to those already determined to be not abstract. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (it is "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases").

*First*, claim 11 of the '741 Patent claims "*display[ing] an object, relating to an application*" and "*enabling a user to select the object* while the device is in the locked mode," thereby claiming a *particular manner* by which the object must be accessed. This specific technological improvement is similar to that found patent eligible in *Core Wireless*, which was directed to "an application summary that can be reached directly from the menu," thereby

---

[7] Amazon does not demonstrate that claim 11 is representative. For example, the dependent claims add significant limitations as to implementation (cl. 12 ("dimmed icon"), cl. 13 ("illuminating or highlighting the object"), cl.14 ("a movable object"), cl. 16 ("a touch screen display"). Although Amazon is wrong that claim 11 does not provide a specific technological solution, each of the dependent claims adds inventive limitations that are not abstract. Because Amazon fails to analyze any of these dependent claims, it cannot meet its burden to show all claims are patent-ineligible.

[8] Here, like in *Core Wireless,* prior art interfaces were "slow, complex and difficult to learn, particularly to novice users." *Core Wireless*, 880 F.3d 1356 at 1363 (inventions that improve (1) "the efficiency of using the electronic device by bringing together 'a limited list of common functions and . . . stored data,' which can be accessed directly from the main menu," and (2) "[t]he speed of a user's navigation through various views and windows" are "directed to an improvement in the functioning of computers, particularly those with small screens").

11

"specifying a particular manner by which the summary window must be accessed." *Core Wireless*, 880 F.3d at 1362. *Second*, claim 11 of the '741 Patent claims require that the device exist—and remain—in a locked state while (1) causing the display of an object, relating to an application, (2) enabling a user to select the object, and (3) determining a state, function or utility of the application (*See, e.g.*, '741 Patent, cl. 11). Likewise, the claims in *Core Wireless* were not abstract because they required "that the summary window 'is displayed while the one or more applications are in an unlaunched state,' a requirement that the device applications exist in a particular state." *Id.* At 1363. *Third,* claim 11 of the '741 Patent claims enabling a user to select an object "in order to *determine a state, function or utility of the application* without fully activating the application while the device remains in the locked mode," thereby restraining the *type* of information shown to information which is sufficient to determine "a state, function or utility of the application." The Federal Circuit in *Core Wireless* also found that the patent at issue "further requires the application summary window list a limited set of data, 'each of the data in the list being selectable to launch the respective application and enable the selected data to be seen within the respective application.' This claim limitation restrains the type of data that can be displayed in the summary window." *Id.* at 1362-63. The challenged claim, like the claims at issue in *Core Wireless*, includes limitations which, taken together, "disclose a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods. . . . Like the improved systems claimed in *Enfish*, *Thales*, *Visual Memory*, and *Finjan*, these claims recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices." *Id*.; *see also Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 Fed. App'x 1001, 1004 (Fed. Cir. 2017) ("a specific, structured graphical user interface paired with a prescribed functionality directly related to the graphical user interface's structure that . . . resolves a specifically identified problem in the prior state of the art"

was eligible under step one).

Amazon's motion confusingly alleges that the '741 Patent is directed to at least four different "abstract ideas:" (1) "providing access to application information on a locked device," (2) "the human activity of previewing a message," (3) "limiting and coordinating the display of information based on a user selection," and (4) "providing information about an application in locked mode" (D.I. 19, 13-15). Amazon's apparent position is that the '741 Patent is "directed to" allowing a user to access limited application information on a locked device based on a specific user selection and through use of a particularized user interface. That is not an abstract idea.

Amazon's cited authority is distinguishable. *First*, Amazon attempts to draw an analogy to *Intellectual Ventures I LLC v. Symantec Corp.*, arguing that the "claimed invention is also abstract because it is analogous to the human activity of previewing a message" (D.I. 19, 13 n.5). *Intellectual Ventures* did not involve "previewing a message" or determining the contents of a letter without opening it, but rather a person discarding letters based on the source of the letter written on the outside. 838 F.3d 1307, 1314 (Fed. Cir. 2016). The '741 Patent does not claim "previewing a message," but instead provides partial access to an application's functionality while the device remains locked. Amazon's next argument, that the invention "merely claims the resulting systems" and does not provide new hardware or specialized algorithms, also fails (D.I. 19, 13-14). The '741 Patent claims (1) "causing a display of a device to display an object," (2) "enabling a user to select [an] object," (3) "determining a state, function or utility of the application," and (4) maintaining the state wherein "the device is in a locked mode." This ordered combination of steps to accomplish a particular goal is a specialized algorithm.[9] Each step is

---

[9] *See, e.g., Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011) ("[T]he preferred definition of 'algorithm' in the computer art is: 'A fixed step-by-step procedure for accomplishing a given result....'") (citation omitted).

described in the specification (*see, e.g.,* '741 Patent at 3:4-21, 4:5-19, 5:53-60, 6:56-7:13, and 7:39-54). Finally, Amazon's fails to distinguish *Core Wireless* by relying on *Int'l Bus. Machines Corp. v. Zillow Grp., Inc*., 50 F.4th 1371, 1378 (Fed. Cir. 2022). Both the '741 Patent and the patent in *Core Wireless* are directed towards an improved user interface for computing devices. *IBM* dealt instead with a patent "much broader than the asserted claims in *Core Wireless*" that recited a method which "has long been done by cartographers creating paper maps." *Id*. at 1381.[10]

### 2.     The '741 Patent claims inventive concepts.

The '741 Patent claims an "inventive concept" which "allows users to achieve certain benefits of an application 'while the device remains in the locked mode'" to "facilitate[] easier access to application functionality *while maintaining the benefits of a locked state*" (D.I. 5, ¶ 277 (citing '741 Patent, cl. 11)). This, in turn, "allows the quick activation of high level user interface elements for passive information gathering, while the device remains in locked mode" and "provides specific technological improvements that, for example, 'provides the user with the advantage of determining, prior to unlocking a device from an inactive state, an application or set of user interface elements for the device to open up to" (*id.*, ¶ 278 (citing '741 Patent, 6:50-53, 7:11-13)). These factual allegations found in the FAC preclude granting Amazon's motion. *Peloton Interactive, Inc. v. Echelon Fitness, LLC*, 2020 U.S. Dist. LEXIS 118945, *10-11, 2020 WL 3640064 (D. Del. July 6, 2020) (denying a motion to dismiss because "the claims of the patents at issue recite the aspects that Plaintiff alleges in the amended complaint make them inventive."). Amazon's argument that the invention uses generic underlying components "misses the point—

---

[10] The Federal Circuit found that the patent at issue in *IBM* was "a quintessential 'do it on a computer' patent [that] could be accomplished using colored pencils and translucent paper." *IBM*, 50 F.4th at 1381-83. The invention of the '741 Patent—an improved user interface which provides for limited application access without unlocking the device—is not a "do it on a computer patent," but an improvement in user interface functionality unique to the realm of computer technology.

useful improvements to computer networks are patentable regardless of whether the network is comprised of standard computer equipment." *Throughtek*, 2024 U.S. Dist. LEXIS 20139, at *19 (quoting *Cooperative Ent'mt*, 50 F.4th at 135).

Amazon's step two analysis ignores these factual allegations and argues against a strawman simplification of the claimed functionality. According to Amazon, the asserted claims merely "recite[] a result—accessing an object associated with an application on a device in locked mode and providing information about the application—in purely functional terms" (D.I. 19, 15). In reality, the '741 Patent explicitly claims specific steps, including (1) "causing a display of a device to display an object," (2) "enabling a user to select [an] object," (3) "determining a state, function or utility of the application," and (4) maintaining the state wherein "the device is in a locked mode." Amazon's focus on the result ignores the claimed invention entirely.

Further, the '741 Patent does not claim a broad abstract idea which is artificially limited to a specific environment. It claims a specific solution to a particular problem (e.g., accessing limited application data while a device remains in a locked state), which is only present in a particular technological environment (e.g., devices in a locked state). The requirement that the device is (and remains) locked is pervasive in each limitation of the independent claims and is not merely a field of use limitation found in the preamble. These claims are like those the Federal Circuit has found valid under step two. *Trading Techs.*, 675 Fed. App'x at 1004 ("the specific structure and concordant functionality of the graphical user interface are removed from abstract ideas").

C.    **The '693 Patent is Patent-Eligible**

1.    **The '693 Patent is not abstract.**

As set forth in the FAC, the '693 Patent "is directed to novel and unconventional improvements in the field of computer processing," which provide "improvements over prior processing systems that result in improved processing capabilities and more accurate outputs" (D.I.

5, ¶ 247). Amazon argues the '693 Patent "is drawn to the abstract idea of combining and processing different types of data" and asserts that the Federal Circuit has repeatedly held claims involving these alleged basic data processing concepts are abstract (D.I. 19, 16-17). This again oversimplifies the claims, which are directed to a specific and novel way to process different types of data, and Amazon's cited cases are readily distinguishable. In *Digital Image Techs., LLC v. Elecs. For Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014), the claims were directed to "information in its non-tangible form" claiming simply a "first data for describing" color confirmation and a "second data for describing" spatial information, regardless of physical medium. Here, by contrast, the claims require a "dynamic processing mechanism" and a "static processing mechanism" which, unlike *Digital Images Techs.*, are expressly tied to a processor, which allows for the combined processing of different types of data that were previously limited to separate processing. In each of Amazon's additionally cited cases, the Court found no improvement in computer functionality. The '693 Patent improves the way computers operate, and therefore is not directed to an abstract idea.

The Federal Circuit has upheld patent eligibility for claims directed to improved solutions for processing different types of data. For example, the Federal Circuit has held that improvements in computer database functionality are not abstract because the invention improves the way computers operate. *Enfish*, 822 F.3d 1327. In *Enfish*, the Federal Circuit highlighted that the claims were directed to a logical model for a computer database that involved organizing and accessing data in a more efficient manner, thus improving a computer's operation. Similarly, the claims here are directed to a specific improvement in the way computers operate, by providing a way to combine disparate data streams resulting in improved processing capabilities and more accurate outputs which are specifically tied to static and dynamic processing mechanisms. (D.I. 5, ¶ 247).

Similarly, the Federal Circuit has found that claims directed to a specific way of addressing a problem unique to the Internet are patent-eligible and not merely an abstract idea. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014); *see also Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) (holding claims directed to restricting software operation based on a license status were patent-eligible because they were directed to a specific technological solution to a problem in the software field). The '693 Patent addresses a problem specific to systems that offer applications or services based on dynamic (e.g., real-time) or static information. Before the '693 invention, there was "a need for data processing methods to generate comprehensive results that combines the features of slow-moving data systems with real-time data systems" (D.I. 5, ¶ 247 (citing '693 Patent, 1:40-42)). This problem is unique to computer systems, which previously segregated data based on whether the data was static or dynamic (*Id.*, ¶¶ 247-249; '693 Patent, 1:22-29). The inventions of the '693 Patent improve data processing systems, thus improving the range of data inputs and accuracy of outputs. In particular, the '693 Patent notes that previously (when data was separately processed via a static processing method and a dynamic processing method), there were significant challenges with efficiently processing the combination of historical and current data sets ('693 Patent, 3:36-4:22). When processed as separate flows, there were no feedback mechanisms between the two data processes and analyses (*id.*) This improvement falls within Federal Circuit case law holding claims directed to solving discrete technological problems are not directed to abstract ideas. *See Packet Intelligence LLC v. NetScout Sys.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (claim was directed to "solving a discrete technical problem: relating disjointed connection flows to each other" was not an abstract idea).

Amazon mischaracterizes the '693 Patent when arguing that it fails to explain how to combine and process the different types of data, only reciting the result of static and dynamic

processing (*Compare* D.I. 19, 16 *with* '693 Patent, 4:26-42). The patent describes how the data is combined (computational chains are marshalled…shaped by analytics engines…and returned to stream processing systems) to provide a specific technological solution (feedback mechanisms between both processing mechanisms) that improves the functioning of computers—this is not abstract, and these specifics are reflected in the claims ('693 Patent, cls. 1, 11, 4:26-42).

### 2.  The '693 Patent claims inventive concepts.

Amazon's step two analysis is also flawed. Amazon argues that the claims simply recite generic computing steps, providing no implementation detail (D.I. 19, 16). Amazon again oversimplifies the claim language, omitting the "at least one dynamic" and "at least one static" processing mechanisms, as well as the "marshalling via a processor" of the at least one processing mechanism (*Compare* '693 Patent, cl. 1 *with* D.I. 19, 16-17). Amazon recites overly broad steps and omits claim elements, thus failing to account for the non-generic implementation of the '693 Patent's solution. Unlike the cases Amazon cites, where patents simply recited an abstract idea implemented using conventional/generic computer components, the '693 Patent requires specific components and claims a specific solution (processing static and dynamic data, thus improving the range of data inputs and accuracy of outputs) to a technological problem (prior methods of data processing segregated data based on whether it was static or dynamic) (D.I. 5, ¶ 248 (citing '693 Patent, 1:18-29)). At this stage, Nokia needs only to show "plausible and specific factual allegations that aspects of the claims are inventive." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019). Nokia has made such a showing, and dismissal is unwarranted.

### D.  The '818 Patent is Patent-Eligible

### 1.  Amazon's "incorporation by reference" is improper.

Amazon's motion does not make *any* substantive argument regarding the claims of the '818 Patent asserted in this case. Instead, Amazon attempts to incorporate by reference a *different*

*motion* in a *different case* regarding *different claims* (D.I. 19, 19) in order to subvert the Court's page limits. *Flintkote Co. v. Aviva P.L.C.*, 2015 U.S. Dist. LEXIS 37482, n.2 (D. Del. Mar. 25, 2015) ("The Court cannot permit this practice [of incorporation by reference] as it effectively subverts the briefing page limits."). Amazon's refusal to meaningfully challenge the asserted claims in the present case warrants denial of Amazon's motion. *AgroFresh Inc. v. Essentiv LLC*, 2020 U.S. Dist. LEXIS 222898, n.14 (D. Del. Nov. 30, 2020). Although such incorporation is improper, to the extent that the Court considers Amazon's incorporated material in connection with *this motion*, Nokia likewise incorporates by reference the facts and arguments set forth in Nokia's response in *Nokia Corp., v. Amazon.com, Inc.*, No. 23-1236-GBW (the "1236 Matter") that the '818 Patent is directed to specific improvements in technical functionality that were not well-understood, routine, or conventional. Nokia is in this unenviable position because a full response here prejudices Nokia's ability to defend its other patents within the briefing page limits.

Moreover, Amazon did not establish that Claim 1 of the '818 Patent is representative. For purposes of a Rule 12 motion to dismiss, the Federal Circuit has held claims are considered representative only if they are (1) substantially similar and (2) linked to the same abstract idea. *Cleveland Clinic*, 859 F.3d at 1360. Claim 1 (asserted in the 1236 Matter) is not representative of claim 6 (asserted here), and so Amazon's allegations in the 1236 Matter are inapplicable. Claim 1 recites a method for *encoding* a sequence of pictures and *defining parameters* within parameter sets, whereas Claim 6 recites a method for *decoding* a sequence of pictures and *recognizing parameters* in parameter sets. Amazon does not provide any evidence that claim 6 (decoding) is "substantially similar and linked to the same" alleged abstract idea as claim 1 (encoding). Amazon merely makes the conclusory statement that "claim 6 is no different for purposes of ineligibility than claim 1" despite admission of a "*material difference*" between the claims (D.I. 19, 9, 19).

Amazon's incorporation by reference cannot establish that claim 1 (in the 1236 Matter) is representative of claim 6 (asserted here).

### 2.    Claim 6 of the '818 Patent is not ineligible.

Claim 6 of the '818 Patent is directed to an improved data structure comprising distinct sequence and picture parameter sets, as well as a picture parameter value remaining unchanged in all slice headers of a picture. *Throughtek*, 2024 U.S. Dist. LEXIS 20139, at *13 (citing *Enfish* for finding "a specific type of data structure . . . that was designed to improve the way a computer stored and retrieved data" not abstract). The FAC explains how the '818 Patent claims a specific implementation and technical solution rooted in video coding technology—a novel data structure based on the frequency of change in parameters that improves efficiency (D.I. 5, ¶¶ 109-116; '818 Patent, 4:15-19, 6:50-59). *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014); *Trading Techs.*, 675 Fed. App'x at 1004. Claim 6 includes inventive concepts not found in Claim 1—a decoder which recognizes parameters in both sequence and picture parameter sets, and forms a picture parameter value using information of a slice header, to enable improved decoding of video content over the prior art ('818 Patent, cl. 6, 4:15-19, 6:50-59, 7:63-9:6; D.I. 5, ¶ 113). The dependent claims provide further distinction. For example, dependent claim 8 requires the picture parameter set to include a reference to a sequence parameter set ('818 Patent, cl. 8), further distinguishing the invention.

## V.    CONCLUSION

For the foregoing reasons, the Amazon's motion should be denied or Nokia should be granted leave to amend its Complaint where, as here, justice so requires and there is no prejudice, delay, bad faith or futility. *See B#OnDemand LLC v. Spotify Tech*., S.A., 484 F. Supp. 3d 188, 207 (D. Del. 2020).

Date: March 15, 2024                    Respectfully submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St. 12th Floor
Wilmington DE 19801
Tel.: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**MCKOOL SMITH, P.C.**

Warren H. Lipschitz
Alexandra F. Easley
300 Crescent Ct. Ste, 1200
Dallas, TX 75224
Tel: (214) 978-4000
wlipschitz@mckoolsmith.com
aeasley@mckoolsmith.com

R. Mitch Verboncoeur
303 Colorado St. Suite 2100
Austin, TX 78701
Tel: (512) 692-8700
mverboncoeur@mckoolsmith.com

Josh Newcomer
600 Travis St., Suite 7000
Houston, Texas 77002
Tel: (713) 485-7300
jnewcomer@mckoolsmith.com

Kevin Burgess
104 East Houston St., Suite 300
Marshall, Texas 75670
Tel: (903) 923-9000
kburgess@mckoolsmith.com

**ALSTON & BIRD LLP**

Theodore Stevenson, III
2200 Ross Ave. #2300
Dallas, TX 75201
Tel: (214) 922-3400
ted.stevenson@alston.com

John D. Haynes
Nicholas T. Tsui
Shawn Gannon
1201 West Peachtree Street
Atlanta, GA 30309
Tel: (404) 881-7000
john.haynes@alston.com
nick.tsui@alston.com
shawn.gannon@alston.com

*Counsel for Plaintiffs*
*Nokia Corporation and Nokia Technologies Oy*

22