IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| NOKIA CORPORATION and <br> NOKIA TECHNOLOGIES OY, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC. and <br> AMAZON.COM SERVICES, LLC, <br><br> Defendants. | C.A. No. 23-1232 (GBW) <br><br> **DEMAND FOR JURY TRIAL** |

**REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL
DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)**

OF COUNSEL:

J. David Hadden
Saina S. Shamilov
Ravi R. Ranganath
Allen Wang
Vigen Salmastlian
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
(650) 988-8500

Todd R. Gregorian
Ethan M. Thomas
FENWICK & WEST LLP
555 California Street
San Francisco, CA  94104
(415) 875-2300

April 22, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants Amazon.com, Inc.
and Amazon.com Services, LLC*

**TABLE OF CONTENTS**

|      |                                                        | Page |
|------|--------------------------------------------------------|------|
| I.   | THE '254 PATENT IS PATENT-INELIGIBLE....................| ii   |
| II.  | THE '741 PATENT IS PATENT-INELIGIBLE....................| 3    |
| III. | THE '693 PATENT IS PATENT-INELIGIBLE....................| 5    |
| IV.  | THE '602 PATENT IS PATENT-INELIGIBLE....................| 7    |
| V.   | THE '818 PATENT IS PATENT-INELIGIBLE....................| 10   |

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)...................................................................................................7

*Bot M8 LLC v. Sony Corp. of Am.*,
  465 F. Supp. 3d 1013 (N.D. Cal. 2020) .......................................................................................5

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019).....................................................................................................8

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018)...................................................................................................4

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)...................................................................................................6

*F45 Training Pty Ltd. v. Body Fit Training USA Inc.*,
  No. 20-1194, 2022 WL 17177621 (D. Del. Nov. 17, 2022) .......................................................8

*GREE, Inc. v. Supercell Oy*,
  834 F. App'x 583 (Fed. Cir. 2020) ..............................................................................................8

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) ................................................................................................2, 7

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016).................................................................................................6, 8

*KOM Software Inc. v. NetApp, Inc.*,
  No. 18-160-WCB, 2023 WL 6460025 (D. Del. Oct. 4, 2023)................................................5, 9

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
  223 F. Supp. 3d 1026 (C.D. Cal. 2016) ......................................................................................9

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ..................................................................................................2, 9

*Trading Technologies Int'l v. CQG, INC.*
  675 F. App'x 1001 (Fed. Cir. 2017) .......................................................................................4, 5

*Two-Way Media v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)...........................................................................................1, 2, 3

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ...................................................................................................9

*Wireless Discovery LLC v. eHarmony, Inc.*,
    654 F. Supp. 3d 360 (D. Del. 2023).....................................................................................3, 10

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ......................................................................................................8

**STATUTES**

35 U.S.C. § 101...........................................................................................................3, 5, 8, 10

I.      **THE '254 PATENT IS PATENT-INELIGIBLE.**

The '254 patent is directed to the abstract idea of routing messages to a registered address using identifiers. (*See* D.I. 19 ("Op. Br.") at 3-4, 10-11.) Nokia cannot reasonably dispute this. It admits that the '254 patent claims the idea of "registering an application identifier for the applications on a user's device, receiving messages at the user device, and directing the message based on the registered application identifier." (D.I. 24 ("Opp.") at 3.) This is an abstract idea—no different than sorting and mailing done by the U.S. Postal Service for centuries. *Two-Way Media v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (invalidating claims directed to "routing information"). None of Nokia's arguments changes this.

Nokia argues first that claim 1 of the '254 patent provides "a specific technological improvement to existing signaling protocols." (Opp. at 9.) However, Nokia points to nothing in the '254 patent claims that captures this improvement.[1] Indeed, the patent describes no new format or data structure for the "application identifier" or any new or specific routing protocol. The specification references only the existing SIP protocol,[2] which is simply a method for routing messages using identifiers, the very idea to which the claims are directed.

Nokia's contention that the "invention allows for greater compatibility and reduced processing need" also lacks merit. (*Id.* at 9, citing D.I. 5, ¶ 236 (referencing greater compatibility and reduced processing need without support from the '254 patent).) This is a result, not a specific solution; nothing in the claims or specification describes *how* to achieve this aspirational goal.

---

[1] Nokia cites a description of Figure 1 of the patent that states that different applications "may provide different functionalities at the same time." (Opp. at 9, citing '254 patent at 6:27-33.) But this describes a feature of existing equipment used for SIP communications.

[2] According to the "Background" section of the patent, "the Session Initiation Protocol (SIP) . . . is a signaling protocol that assists digital devices in establishing end-to-end multimedia sessions," and "provides features that resemble those provided by Public Switch Telephone Network (PSTN) as well as Internet protocols such as Transmission Control Protocol/Internet Protocol (TCP/IP) and Hypertext Transfer (HTTP)." ('254 patent at 1:40-46.)

1

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) (claims lacked "sufficient recitation of *how* the purported invention improve[s] the functionality."); *Two-Way Media*, 874 F.3d at 1337-38 (claims must "sufficiently describe how to achieve [the solution] in a non-abstract way").

The claims are also non-inventive at *Alice* Step 2.  It is undisputed that the '254 patent "utilize[s] general computer, network, or Internet components," and claims no new device or special programming.  (*See* Opp. at 10.)  Nokia argues, however, that claim 1 recites an inventive concept because it purportedly "enables a device to receive network traffic over a single protocol while supporting multiple client applications that can provide different functionalities." (*Id*.)  This fails for two reasons.  First, Nokia cites no support in the claims or specification for this assertion, and the patent provides no solution for achieving it.  *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (inventive concept must be found in the patent itself, not patentee's conclusory assertion).  Second, the patent admits the existing SIP protocol provided this benefit; it is not an inventive concept.  (*See* '254 patent at 5:45-48 (describing capabilities of SIP protocol).)

Nokia points to its allegation in the complaint that the patent "claims an improvement to a signaling protocol that associates an application identifier to signaling protocol applications on a multi-application device," thus "eliminating the need to have a separate signaling protocol stack for each application." (Opp. at 10, citing D.I. 5, ¶ 235.)  This allegation is irrelevant:  the patent admits existing systems used application identifiers (*see, e.g.*, '254 patent at 1:67-2:1) and the idea to use an application identifier associated with a signaling protocol is nothing more than the abstract idea to which the claims are directed.[3]  This cannot provide an inventive concept as a

---

[3] Moreover, the patent does not identify any specific, let alone inventive, means of using an application identifier. (*See* '254 patent at 7:35-43 (suggesting application identifier can be implemented and used in any number of existing ways).)

2

matter of law. *See Two-Way Media*, 873 F.3d at 1337. The '254 patent claims are therefore ineligible and invalid under § 101.[4]

## II.     THE '741 PATENT IS PATENT-INELIGIBLE.

The '741 patent is directed to the abstract idea of providing access to application information on a locked device. (Op. Br. at 13-15.) Again, Nokia does not meaningfully dispute this: it argues that the patent "claims 'display[ing] an object, relating to an application' and 'enabling a user to select the object while the device is in the locked mode.'" (Opp. at 11.) This is similar to a display at a department store, where customers can see items of interest before going into the store. Nokia's arguments to the contrary each fail.

Nokia argues first that the claims of the '741 patent are non-abstract because they provide "user-access to specific functionality without unlocking the device." (Opp. at 11.) But the '741 patent claims do not contribute any actual technology for doing this. They claim only the idea to display high-level information about an object on a locked device. Indeed, while the '741 patent describes the aspirational goal of "quick activation" while a device is "in locked mode," it offers only a picture of what a solution might look like, rather than any actual technology. (*See* '741 patent, Fig. 2A; *see also* 4:44-47 ("any suitable mechanism can be used to unlock the device"), 1:62-65, 6:56-59.) Thus, contrary to Nokia's assertion, the patent neither describes nor claims any

---

[4] Contrary to Nokia's assertion, the Court can and should treat claim 1 as representative. (*See* Opp. at 8, n.6.) Claim 1 is the broadest of the 6 independent claims and covers the same registering/receiving/directing steps as the others. While method claim 1, and corresponding apparatus claim 20, are protocol-agnostic (*i.e.*, require "signaling protocol communications" without limitation to any specific protocol), the remaining independent claims 6, 16, 27, and 29 narrow the idea of claim 1 to messaging that uses the SIP protocol, which long predated the patent. (*See* '254 patent at 1:37-41 (describing SIP as "[o]ne particularly popular . . . protocol").) These are no less abstract. Nokia does not present "additional concrete and technical elements" of the other claims or show the distinctive significance of the other non-asserted claims that would require separate analysis of patentability. *Wireless Discovery LLC v. eHarmony, Inc.*, 654 F. Supp. 3d 360, 371 (D. Del. 2023), *appeal docketed*, No. 23-1586 (Fed. Cir. Mar. 16, 2023).

3

"particular manner" of accessing an application while in locked mode.  (*See* Opp. at 11.)  Indeed, Nokia's own description of the invention makes clear the functional and results-oriented nature of the claims.  It describes the "solution" of claim 11 as a series of functional steps—"displaying an object," "enabling a user" to access the object, and "requir[ing] that the device exist – and remain – in a locked state"—with no actual solutions for achieving them.  (Opp. at 11-12.)

Nokia strains to analogize its claims to the "user interface" claims upheld in *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018), but its claims are far different.  The claims in *Core Wireless* were directed to a "particular manner of summarizing and presenting information in electronic devices"—they recited an "application summary window" that contains a "limited list," restricted to "common functions and commonly accessed stored data," and also specified a "particular manner by which the summary window must be accessed."  *Id.* at 1362.  The claims also "restrained" the types of data that would be displayed and specified that the device applications exist in a particular, un-launched, state.  *Id.*  Thus, the claims provided a specific way to efficiently present information, allowing a user to navigate a small display, that improved the operation of the device.  Unlike the claims in *Core Wireless*, the '741 patent claims do not recite a new or improved user interface.  They claim only the high-level idea of being able to access an object on a device in locked mode, but without providing any corresponding technical detail.  They do not offer any new or particular way of presenting, summarizing, or accessing information that improves or increases the efficiency of a user interface.  ('741 patent, cl. 1.)

Nokia's attempt to analogize the claims to those in *Trading Technologies Int'l v. CQG, INC.* 675 F. App'x 1001 (Fed. Cir. 2017) similarly fails.  (Opp. at 12.)  There, the claims specified the structure and functions for a graphical user interface down to the detail of dividing a screen

4

into "display regions," each containing a different set of "indicators," with indicators providing different bids, prices, price levels, and axes that would be most useful for electronic trading of stocks and bonds. *Trading Techs.*, 675 F. App'x at 1003. The '741 patent claims do not come close to this level of detail.

At *Alice* step 2, Nokia contends that two paragraphs in its amended complaint amount to "factual allegations" that preclude judgment of § 101 invalidity. (Opp. at 14.) However, as Federal Circuit Judge Bryson recently held, a patentee that claims a fact dispute precludes resolution of a § 101 challenge to patent eligibility must identify the specific "aspects of the claims [that] are inventive." *KOM Software Inc. v. NetApp, Inc.*, No. 18-160-WCB, 2023 WL 6460025, at *10 (D. Del. Oct. 4, 2023). Where the patentee fails to articulate "what the alleged inventive concept is," "how it is embodied in the claims," or how it is "described and enabled by the specification," there is no genuine factual dispute. *Id.* at *11. Nokia's allegations merely paraphrase the claims, describe the claimed results, and proclaim that the claimed inventions are novel and constitute technological solutions. (D.I. 5 ¶¶ 277-79.) This is insufficient to create a fact dispute that precludes resolution of patent ineligibility. *See Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1027 (N.D. Cal. 2020) (allegation that "the totality" of limitations supplied inventive concept did not create fact issue), *aff'd in relevant part*, 4 F.4th 1342 (Fed. Cir. 2021).[5]

### III. THE '693 PATENT IS PATENT-INELIGIBLE.

The claims of the '693 patent are directed to the impermissibly abstract idea of combining and processing different types of data—*e.g.*, static and dynamic—by transmitting the data to

---

[5] The Court need not separately analyze the claims that depend from claim 11. (Opp. at 11, n.7.) The dependent claims add trivial limitations to claim 11, including limitations relating to the display and use of icons (claims 12 (dimmed icon) and 13 (illuminating or highlighting), claim 14 (movable icon)) and the use of a generic touch screen (claim 16). None changes the focus of claims or amounts to a specific technological solution. Nokia does not dispute claim 11 is representative of the other independent claims (claims 1 and 17).

different processing mechanisms. (Op. Br. at 16.) Claiming the idea of separately processing different types of data using a black box "mechanism" is a quintessentially abstract idea, as a long line of Federal Circuit cases confirms. (*Id.* (citing cases).) Yet, the '693 patent claims recite nothing more than this result, achieved in an unspecified manner using generic computing components and functional limitations. (*Id.*) Nokia's arguments to the contrary each fail.

Nokia argues first that the claims are not abstract because they "are directed to a specific and novel way to process different types of data"—*i.e.*, the idea of using "dynamic" or "static" processing mechanisms "tied to a processor." (Opp. at 16.) But the ideas of static and dynamic processing long predated the patent, and the patent discloses no new or particular means of performing this processing. ('693 patent at 1:17-36 (describing "[t]raditional[] data processing and analysis"), 5:4-11 (giving generic high-level examples of static and dynamic processing).) The claims recite only the *results* of dynamic and static processing, implemented using a black-box "mechanism." And the fact that the claims are "tied to a processor" (Opp. at 16) does not make them any less abstract. *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) ("recited physical components merely provide a generic environment in which to carry out the abstract idea"). Finally, it makes no difference that, as Nokia contends, that the claims address "a problem unique to computer systems," (*see* Opp. at 17) because they do not recite a technological *solution* to that problem (*e.g.*, a new or improved processor or a specific algorithm for data processing). Claims that recite basic computing functions, implemented using generic components, are ineligible as a matter of law.[6] *See Digitech Image Techs., LLC v. Elecs. for*

---

[6] Nokia points to the patent's description of alleged shortcomings in the prior art, and the potential benefit of "feedback mechanisms between the two [dynamic and static] processes and analyses." (Opp. at 17, citing '693 patent at 3:36-4:22.) But the claims do not require "feedback mechanisms," and do not describe how to implement such a mechanism.

*Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (invalidating claims directed to abstract idea of "gathering and combining data" and "manipulat[ing] existing information").

The claims of the '693 patent also fail *Alice* step 2. Nokia contends that Amazon's step 2 analysis "omits claim elements," including "at least one dynamic" and "at least one static" processing mechanism and the claimed "marshalling via a processor." (Opp. at 18.) But dynamic and static processing were conventional as of the date of the patent; they cannot supply an inventive concept as a matter of law. ('693 patent at 1:17-36; 5:4-11); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) (reciting "preexisting practice[s]" and technologies does not confer patentability). And the claimed "marshalling" is a function without any technical detail; it also cannot add an inventive concept. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) (claims that "only use[] generic functional language" to achieve the alleged solution are non-inventive); (*See* '693 patent at 11:33-44 (describing "marshalling" as encoding and using standardized data models, but failing to provide any technical detail)).[7]

## IV. THE '602 PATENT IS PATENT-INELIGIBLE.

The '602 patent is directed to a general arrangement of components within a physical housing. (Op. Br. at 17.) Nokia agrees that the '602 patent claims relate to an "arrangement" of components within a cell phone that reduces thickness as compared to traditional flip phones. (Opp. at 2 (claim directed to "ways to achieve a thinner device" and "a novel arrangement and configuration of internal components").) It describes the inventive contribution of the claims as "the configuration of the side-by-side engine/battery" inside a cell phone. (*Id.*) But the physical arrangement of generic components—even a purportedly novel and helpful arrangement—is still

---

[7] Nokia does not dispute that claim 1 is representative for purposes of the ineligibility analysis. (Opp. at 15-18.)

7

abstract. (Op. Br. at 17); *F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, No. 20-1194, 2022 WL 17177621, at *10 (D. Del. Nov. 17, 2022) ("physically redistributing or rearranging exercise stations in fitness studios"), *appeal dismissed*, No. 2023-1304, 2023 WL 2965590 (Fed. Cir. Apr. 17, 2023); *GREE, Inc. v. Supercell Oy*, 834 F. App'x 583, 588 (Fed. Cir. 2020) ("creating and applying a template of positions to . . . game contents").

Nokia argues that the '602 patent claims are directed to eligible subject matter because they claim "*structural limitations*" and are directed to the "*physical composition*" of electronic devices. (Opp. at 5 (emphasis in original).) This argument fails for several reasons. First, the claims of the '602 patent recite generic and conventional components common to any mobile phone, not a new "machine." (*See, e.g.*, '602 patent, cl. 1 ("housing," "camera," "engine section," "transceiver," "battery," "printed circuit board").) Second, the Federal Circuit routinely invalidates claims like Nokia's that recite physical components.[8] *See Yu v. Apple Inc.*, 1 F.4th 1040, 1042-46 (Fed. Cir. 2021) (claim directed to "improved digital camera"); *TLI*, 823 F.3d at 611 (claim reciting "telephone unit" and "server" abstract and ineligible).

Nokia argues next that the "specific arrangement of hardware" in the claims cannot be abstract because it "results in tangible improvements over the prior art (such as decreased thickness)." (Opp. at 6.) But the patent provides no *technical* detail for achieving the claimed benefit of reduced thickness. For example, claim 1 requires a "one piece housing," "a cut out" in the rear of the housing," "a camera located in said housing," "an engine section," and "a user input

---

[8] Courts in *some* instances uphold patents directed to "tangible devices." (*See* Opp. at 6 n.2 (listing cases).) But the mere fact that the claims of the '602 patent recite physical components does not end the § 101 inquiry, as Nokia appears to suggest. *TLI*, 823 F.3d at 611; *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims.").

section located above the engine section" and "adjacent the battery." ('602 patent, cl. 1.) Nothing in the claim describes *how* this arrangement reduces the thickness of a mobile phone.[9] *See Sanderling Mgmt.*, 65 F.4th at 706 (inventive concept must be found in the patent itself, not patentee's conclusory assertion).

The claims of the '602 patent are also non-inventive at *Alice* step 2. Nokia does not meaningfully dispute that the limitations of the asserted claims are routine and conventional. (*See* Opp. at 7 (failing to identify "printed circuit board," "transceiver," "processor," "memory," and "battery" as inventive limitations).) But it argues that the allegations in its complaint that the claims are directed to "improvements [that] were not well-understood, routine, or conventional" "preclude granting Amazon's motion." (*Id.*) This is incorrect. Its conclusory complaint allegations—which do not explain how the alleged inventive concept is enabled by the specification—do not affect the eligibility analysis. *KOM Software, Inc.*, 2023 WL 6460025, at *11. Moreover, Nokia nowhere explains how the claimed arrangement of conventional limitations brings about "some unexpected result or improvement," as it must to show the claims recite an inventive ordered combination. *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1358 (Fed. Cir. 2021) (claim non-inventive where specification did not explain *how* combination of conventional authentication techniques resulted in an "unexpected improvement beyond the expected sum" of the benefits of the individual authentication techniques).[10]

---

[9] For at least this reason, the case Nokia relies on, *Polaris Innovations Ltd. v. Kingston Tech. Co.*, does not apply here. 223 F. Supp. 3d 1026, 1035 (C.D. Cal. 2016) ("The patents thus *claim the enhanced performance of the memory cards themselves*—their performance relative to the size of their footprint is enhanced.") (emphasis added).

[10] Contrary to Nokia's assertion (Opp. at 7, n.5), claim 1 is representative of the remaining claims of the '602 patent. This is the broadest of the three independent claims and covers a portable electronic device with the same (1) one-piece housing, (2) cut out in rear side, (3) camera, (4) engine section, and (5) user input located adjacent to a battery and the engine, as the other two.

9

## V. THE '818 PATENT IS PATENT-INELIGIBLE.

Amazon addresses Nokia's substantive arguments related to ineligibility of the '818 patent claims in its reply submitted in the -1236 matter.[11] Nokia argues that claim 1, asserted in the -1236 matter, is not representative of claim 6 of the '818 patent at issue in this case because that claim requires an *encoder* rather than the *decoder* of claim 6. (Opp. at 19.) But it does not explain why this distinction is relevant to the ineligibility analysis. *Wireless Discovery LLC*, 654 F. Supp. 3d at 371 (treating claim as representative where patentee failed to identify "concrete and technical elements" that would "require . . . a separate patentability analysis"). Indeed, the '818 patent specification describes the claimed invention as a single "encoder-decoder based system." ('818 patent at 4:32-33.) Nokia does not dispute that claim 1 and claim 6 merely recite two sides of the *same* invention and require essentially the same set of limitations. (*See* Op. Br. at 19 (listing common limitations in the two claims).) For the reasons set forth in Amazon's Reply in the -1236 matter, the Court should hold the '818 patent claims ineligible and invalid under § 101.

---

Independent claim 15 requires a housing for a portable electronic device and claim 22 requires a mobile phone. Both include the same five elements required by claim 1. These are no less abstract.

[11] Nokia argues that Amazon's incorporation by reference of its arguments in the -1236 matter is improper. (Opp. at 19.) But Nokia *itself* purports to incorporate arguments from its Opposition in the -1236 matter. (*Id.*) None of Nokia's cited authority addresses the unique facts here—where a defendant seeks to dismiss patent claims in two cases on the same grounds. And unlike in *AgroFresh Inc. v. Essentiv LLC* and *Flintkote Co. v. Aviva P.L.C.*, Amazon does not purport to incorporate voluminous briefs while failing to identify the factual and legal support for its motion. (*Id.*) If the Court grants Amazon's motion in the -1236 case and holds the asserted claim of the '818 patent ineligible, it should do the same for the similar claim Nokia asserts in this case.

|  |  |
|---|---|
| OF COUNSEL: | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Jeremy A. Tigan* |
| J. David Hadden | Jack B. Blumenfeld (#1014) |
| Saina S. Shamilov | Jeremy A. Tigan (#5239) |
| Ravi R. Ranganath | 1201 North Market Street |
| Allen Wang | P.O. Box 1347 |
| Vigen Salmastlian | Wilmington, DE  19899 |
| FENWICK & WEST LLP | (302) 658-9200 |
| 801 California Street | jblumenfeld@morrisnichols.com |
| Mountain View, CA  94041 | jtigan@morrisnichols.com |
| (650) 988-8500 |  |
|  | *Attorneys for Defendants Amazon.com, Inc.* |
| Todd R. Gregorian | *and Amazon.com Services, LLC* |
| Ethan M. Thomas |  |
| FENWICK & WEST LLP |  |
| 555 California Street |  |
| San Francisco, CA  94104 |  |
| (415) 875-2300 |  |
|  |  |
| April 22, 2024 |  |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 22, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Warren H. Lipschitz, Esquire<br>Alexandra F. Easley, Esquire<br>MCKOOL SMITH, P.C.<br>300 Crescent Court, Suite 1200<br>Dallas, TX  75224<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| R. Mitch Verboncoeur, Esquire<br>MCKOOL SMITH, P.C.<br>303 Colorado Street, Suite 2100<br>Austin, TX  78701<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Joshua J. Newcomer, Esquire<br>MCKOOL SMITH, P.C.<br>600 Travis Street, Suite 7000<br>Houston, TX 77002<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Kevin Burgess, Esquire<br>MCKOOL SMITH, P.C.<br>104 East Houston Street, Suite 300<br>Marshall, TX  75670<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

Theodore Stevenson, III, Esquire      *VIA ELECTRONIC MAIL*
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, TX  75201
*Attorneys for Plaintiffs*

John D. Haynes, Esquire     *VIA ELECTRONIC MAIL*
Nicholas T. Tsui, Esquire
Shawn P. Gannon, Esquire
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309
*Attorneys for Plaintiffs*

Stephen R. Lareau, Esquire     *VIA ELECTRONIC MAIL*
ALSTON & BIRD LLP
1120 South Tryon Street, Suite 300
Charlotte, NC  28203-6818
*Attorneys for Plaintiffs*

                          */s/ Jeremy A. Tigan*

                          Jeremy A. Tigan (#5239)